**John C. RADER, Plaintiff-Appellant,**

v.

**Lloyd G. BALFOUR et al., Defendants-Appellees.**

**No. 17299.**

United States Court of Appeals, Seventh Circuit.

March 22, 1971.

**470**

Leo J. Spivack, Chicago, Ill., Nick C. Spanos, Los Angeles, Cal., Masuda, Spivack & Funai, Chicago, Ill., Popham, Thompson, Popham, Trusty & Conway, Kansas City, Mo., of counsel, for appellant.

Arlindo S. Cate, Valentine A. Weber, Jr., William N. Walker, Chicago, Ill., for defendants-appellees Sigma Chi, Alpha Delta Phi, Alpha Chi Sigma, Delta Upsilon, Phi Delta Theta, Phi Kappa Sigma and Zeta Psi Fraternity of North America; Spray, Price, Hough & Cushman, Chicago, Ill., of counsel.

Richard M. Keck, David J. Gibbons, Chicago, Ill., for defendants-appellees Alpha Chi Omega, Alpha Gamma Delta, Alpha Omicron Pi, Alpha Phi International Fraternity, Inc., Alpha Tau Omega Fraternity, Delta Gamma, Delta Tau Delta Fraternity, Delta Zeta, Gamma Phi Beta Sorority, Inc., Kappa Alpha Theta Fraternity, Inc., Phi Epsilon Pi Fraternity, Phi Gamma Delta, Sigma Alpha Epsilon, Sigma Nu Fraternity and Zeta Tau Alpha Sorority; Chadwell, Keck, Kayser & Ruggles, Chicago, Ill., of counsel.

Marshall A. Burmeister, for defendant-appellee Acacia Fraternity; Burmeister, Palmatier & Hamby, Chicago, Ill., of counsel.

Elroy C. Sandquist, Peter M. Sfikas, Richard L. Blatt, Chicago, Ill., for defendant-appellee Pi Kappa Alpha; Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., of counsel.

G. Kent Yowell, Chicago, Ill., for defendant-appellee Phi Kappa Psi; Yowell & Yowell, Chicago, Ill., of counsel.

John P. Ryan, Jr., A. Duncan Whitaker, Washington, D. C., for defendants-appellees L. G. Balfour Co. and Burr, Patterson & Auld Co.; McBride, Baker, Wienke & Schlosser, Chicago, Ill., Howrey, Simon, Baker & Murchison, Washington, D. C., of counsel.

John Edward Porter, Evanston, Ill., Keith E. Pugh, Jr., Washington, D. C., for other appellees.

Before DUFFY, Senior Circuit Judge, FAIRCHILD, Circuit Judge, BEAMER, District Judge.[1]

1. Judge Beamer is sitting by designation from the United States District Court for the Northern District of Indiana.

FAIRCHILD, Circuit Judge.

Plaintiff brought a private treble damage antitrust action. He alleged violations of §§ 1 and 2 of the Sherman Act.[2] Concededly the action is barred by the four year statute of limitations[3] unless the running of the statute was suspended by either (1) the operation of 15 U.S.C. § 16(b), triggered by the institution of a Federal Trade Commission proceeding, or (2) fraudulent concealment of the alleged conspiracy. The district court decided the statute was not tolled on either ground and entered judgment for defendants. Plaintiff appealed. We reverse on ground (1).

Plaintiff sold his company September 14, 1961, and his asserted cause of action had accrued by that date. The FTC proceeding against some of the defendants was begun June 16, 1961 and was still pending in 1967 when plaintiff filed his complaint.

15 U.S.C. § 16(b) provides: "Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, * * * the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter * * *."

A question which readily comes to mind is whether an administrative proceeding before the FTC can fall within the meaning of a "civil or criminal proceeding * * * instituted by the United States." The Supreme Court answered that question in the affirmative in Minnesota Mining & Mfg. Co. v. N. J. Wood Finishing Co.[4] It deemed the administrative character of the FTC proceeding immaterial and held that in order to effectuate congressional purposes § 16(b) should be construed so that the FTC proceeding tolled the statute of limitations.

The FTC proceeding considered in *Minnesota Mining* was brought under the authority of 15 U.S.C. § 21, a portion of the Clayton act, to compel divestiture of a corporate acquisition forbidden by 15 U.S.C. § 18, also part of the Clayton act. Since the Clayton act is one of the "antitrust laws" enumerated in 15 U.S.C. § 12, it was clear that the FTC proceeding in *Minnesota Mining* was authorized by an antitrust law for the purpose of dealing with a violation thereof. The critical question of construction was whether its administrative rather than judicial character prevented its being deemed the type of proceeding described by § 16(b). In the present case, however, the FTC proceeding was brought by authority of 15 U.S.C. § 45, a part of the Federal Trade Commission act. § 45 declares that unfair methods of competition and unfair or deceptive acts or practices in commerce are unlawful, and it authorizes commission proceedings leading to cease and desist orders. The FTC act is not one of the antitrust laws enumerated by 15 U.S.C. § 12, and conduct which is declared unlawful by § 45, and proceeded against by the FTC under authority of that section, need not be a violation of an antitrust law.

The FTC, however, may properly and often does proceed under § 45 to issue a cease and desist order against conduct which it deems an unfair method of competition and which in fact is also a violation of the Sherman act or other antitrust law.[5]

The Supreme Court has said that "on the whole the [F.T.C.] Act's legislative history shows a strong congressional

2. 15 U.S.C. §§ 1 and 2.

3. 15 U.S.C. § 15b.

4. (1965), 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405.

5. Federal Trade Comm. v. Cement Institute (1948), 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010; Federal Trade Comm. v. Motion Picture Adv. Co. (1953), 344 U.S. 392, 393–394, 73 S.Ct. 361, 97 L.Ed. 426; Times-Picayune Pub. Co. v. United States (1953), 345 U.S. 594, 609, 73 S.Ct. 872, 97 L.Ed. 1277.

purpose not only to continue enforcement of the Sherman Act by the Department of Justice and the federal district courts but also to supplement that enforcement through the administrative process of the new Trade Commission."[6]

■ The FTC may, in a § 45 proceeding, complain of conduct which either involves an existing violation of an antitrust law or threatens to ripen into such violation without, in explicit terms, asserting that the conduct amounts to or threatens such violation. The Supreme Court has declared:

"It is * * * clear that the Federal Trade Commission Act was designed to supplement and bolster the Sherman Act and the Clayton Act * * * to stop in their incipiency acts and practices which, when full blown, would violate those Acts * * * as well as to condemn as 'unfair methods of competition' existing violations of them."[7]

The question of construction presented in this case is whether an FTC proceeding under the authority of 15 U.S.C. § 45, if directed at stopping alleged conduct which appears to involve either an existing or incipient violation of the antitrust laws is, like an FTC proceeding under the authority of the antitrust laws, a proceeding "to prevent, restrain, or punish violations of any of the antitrust laws" under 15 U.S.C. § 16(b).

The district court adopted the view that an FTC proceeding brought under § 45 does not qualify. Laitram Corporation v. Deepsouth Packing Company (E. D.La., 1968), 279 F.Supp. 883, adopted the same view. More recently the broader construction was accepted in Lippa's, Inc. v. Lenox, Incorporated (D. Vt., 1969), 305 F.Supp. 182. The district court observed that when *Minnesota Mining* was decided by the third circuit, the opinion[8] pointed out a distinc-

tion between the role of the FTC in proceedings against unfair methods of competition under 15 U.S.C. § 45 and its role in a proceeding authorized by 15 U. S.C. § 21, part of the Clayton act, then before the court. In part the third circuit was concerned with the argument that § 16(b) must be construed so as to relate only to the proceedings to which § 16(a) (use as prima facie evidence of decree in proceeding brought "under" the antitrust laws) could be applied, and may well have held the opinion that a proceeding "under" § 21 could be fitted into § 16(a) and a proceeding "under" § 45 could not.

The Supreme Court, however, in affirming, made no reference to any distinction between an FTC proceeding under § 21 and a proceeding under § 45, stated the question as "whether proceedings by the Federal Trade Commission toll the running of the § 4B [15 U.S.C. § 15b] statute of limitations to the same extent as do judicial proceedings", and held that in construing § 16(b) as applying to commission proceedings it is immaterial whether or not § 16(a) applies to them.

In construing § 16(b), the Supreme Court found little help in legislative history and relied entirely on policy factors deemed to have been favored by Congress. The Court indicated the substantial advantages a private suitor may derive from observing the development and presentation of government proof of an antitrust violation before being required to begin or forego his own action. It noted that "Congress has expressed its belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws." It chose the inclusive construction because "congressional policy sustaining § 5(b) [15 U.S.C. § 16(b)] would be effectively served only by tolling the statute of limitations in cases such as this * * *."

6. *Cement Institute, supra,* 333 U.S. 683, 692, 68 S.Ct. 793, 799.

7. F.T.C. v. Motion Picture Adv. Co. (1953), 344 U.S. 392, 394, 73 S.Ct. 361, quoted and relied on in F.T.C. v. Brown

Shoe Co. (1966), 384 U.S. 316, 322, 86 S.Ct. 1501, 1504, 16 L.Ed.2d 587.

8. New Jersey Wood Finishing Co. v. Minnesota Min. & Mfg. Co. (3rd Cir., 1964), 332 F.2d 346.

Although a supportable distinction could be drawn between an FTC proceeding authorized by the antitrust laws to deal with violations thereof and an FTC proceeding for a cease and desist order aimed against alleged conduct which involves either an existing or incipient violation of the antitrust laws, but brought under a provision of the FTC act authorizing proceedings against a broader range of conduct, we conclude that the policy factors deemed controlling in *Minnesota Mining* are present and controlling here as well. Therefore we construe 15 U.S.C. § 16(b) so that an FTC proceeding brought under 15 U.S.C. § 45 suspends the running of the statute of limitations if the proceeding is directed at alleged conduct which appears to involve an existing or incipient violation of the antitrust laws.

■ The question whether a particular FTC or other government proceeding tolls the statute with respect to a private claim asserted in a civil action is to be resolved, in general, by a comparison of the two complaints. The test is whether the private action is based in part on matters of which the government complained.[9]

The defendants in the civil action include the so-called Balfour defendants (L. G. Balfour Company, its principal officer, and two subsidiaries) and the so-called fraternity defendants (152 college fraternities and sororities). Plaintiff's company was engaged in manufacturing and dealing in a line of insignia goods, items of interest to fraternities and sororities and their members. Briefly summarizing the complaint, plaintiff alleges that the Balfour defendants are engaged in the same business; that they conspired among themselves and with the fraternity defendants in order to limit the production and distribution of insignia goods, control prices, eliminate competition, and obtain a monopoly. Plaintiff avers that this activity forced him to sell his company at a depressed price.

The respondents in the 1961 FTC proceeding were the same as the Balfour defendants in this action, except for one subsidiary. The business involved was the same. The FTC complaint set out 16 allegedly unfair methods of competition, acts, and practices. Several alleged restraints upon competition in insignia goods; several alleged attempts to monopolize and successful monopolization; several alleged agreements and understandings with fraternities and sororities and others for exclusive dealing and payment of royalties to the organizations on insignia goods purchased from respondents; several alleged other practices with an obvious tendency to put competitors at a disadvantage. The complaint alleged that these acts and practices had the tendency to restrain and eliminate competition and have resulted in monopoly. Thus, although the complaint did not assert, as it need not, that §§ 1 and 2 of the Sherman act had been violated, it expressly asserted monopolization and at least implied that the agreements between respondents and the organizations restrained trade.

■ We think the FTC proceeding may fairly be said to be one "to prevent" if not "to restrain or punish" violations of the Sherman act. It further appears clear that the right of action plaintiff asserts in the treble damage action is "based in whole or in part on * * * matter complained of" in the FTC proceeding. It follows that the statute of limitations was tolled.

■ When this case was submitted, the fraternity defendants, who had not been parties to the FTC proceeding, argued that the statute was not tolled as to them. They relied on the 1954 decision of this court in Sun Theatre Corp. v. RKO Radio Pictures.[10] The Supreme Court, however, has recently disapproved *Sun Theatre* and held "that § 16(b) tolls

---

9. Leh v. General Petroleum Corp. (1965), 382 U.S. 54, 64, 65, 86 S.Ct. 203, 209, 210, 15 L.Ed.2d 134.

10. (7th Cir., 1954), 213 F.2d 284, 290–292.

the statute of limitations against all participants in a conspiracy which is the object of a government suit, whether or not they are named as defendants or conspirators therein; indeed, to so hold materially furthers congressional policy by permitting private litigants to await the outcome of government suits and use the benefits accruing therefrom." [11]

The judgment is reversed and the cause remanded for further proceedings, except that as to the parties named in our order dated November 7, 1969 [12] judgment shall be entered as directed in that order.

11. Zenith Radio Corporation v. Hazeltine Research, Inc., decided February 24, 1971, 401 U.S. 321, 91 S.Ct. 795, 805, 28 L.Ed. 2d 77.

12. Plaintiff and certain defendants have agreed to dismissal of the action as to these defendants. On November 7, 1969 we entered an order reflecting their agreement.