**LURIA STEEL & TRADING CORPORA-TION and Hyman-Michaels Company**

v.

**OGDEN CORPORATION et al.**

**Appeal of OGDEN CORPORATION et al.**
No. 72–1309.

United States Court of Appeals,
Third Circuit.

Argued April 23, 1973.

Decided Sept. 6, 1973.

**1018**

Edward W. Mullinix, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellants.

Herbert G. Keene, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., H. Robert Halper, David R. Melincoff, O'Connor, Green, Thomas, Walters & Kelly, Washington, D. C., for appellee.

Before VAN DUSEN, ALDISERT, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Plaintiffs, scrap metal dealers, brought an antitrust suit under Section 4 of the Clayton Act by which they sought treble damages for alleged violations commencing as early as 1946 of Sections 1 and 2 of the Sherman Act and Section 7 of the Clayton Act. Defendants sought by a motion for summary judgment to bar all claims for damages accrued before October 10, 1965, due to the running of the statute of limitations. The opinion and order of the United States District Court for the Eastern District of Pennsylvania, 336 F.Supp. 1238, rejected in general defendants-appellants' motion and barred only damage claims accrued before January 1, 1952. The appeal challenges the district court's disposition of that motion.[1] We affirm.

### I

Plaintiffs-appellees, Luria Steel & Trading Corporation and Hyman-Michaels Company ("Luria"), filed a complaint in the district court on October 10, 1969, alleging violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and Sections 3 and 7 of the Clayton Act, 15 U.S.C. §§ 14 and 18. Defendants-appellants, the Ogden Corporation, three of its subsidiaries, and William J. Luria, moved for summary judgment barring all damages accrued more than four years before filing of the suit on the basis of the applicable four year statute of limitations provided by Section 4B of the Clayton Act, 15 U.S.C. § 15b. In opposing the motion, Luria relied on Section 5(b) of the Clayton Act, 15 U.S.C. § 16(b), which suspends the running of the statute during the pendency of "any civil or criminal proceeding . . . instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws . . . and for one year thereafter."[2] Luria contended a Federal Trade Commission (F.T.C.) proceeding, pending from January 19, 1954, to October 14, 1968, suspended the running of the statute on the claims for which suit was begun October 10, 1969.

The Federal Trade Commission initiated proceedings on January 19, 1954, against scrap metal dealer and broker

---

1. The district court certified on January 31, 1972, that its opinion and order involved a controlling question of law as to which there is substantial ground for difference of opinion. A panel of this court granted permission to appeal this interlocutory order on February 29, 1972. (J. Aldisert dissenting.)

2. 15 U.S.C. § 16(b) reads in full:
 Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however,* That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued.

Luria Brothers & Company[3] for violations of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, and Section 7 of the Clayton Act, 15 U.S.C. § 18. Two years later Luria Brothers was purchased by the defendant, Ogden Corporation. By stipulation, on March 9, 1956, the purchasing Ogden subsidiary, Luria Brothers & Co., Inc., was added as a respondent to the F.T.C. proceeding. The Commission found violations of F.T.C. Act § 5 and Clayton Act § 7 in 1962, Luria Brothers and Co., 62 F.T.C. 243 (1962); and this court affirmed, Luria Brothers & Co. v. Federal Trade Commission, 389 F.2d 847 (3d Cir. 1968). Luria Brothers was found to have violated F.T.C. Act § 5 by entering agreements with various steel mills which restrained trade and tended to create a monopoly and to have violated Clayton Act § 7 by acquisition of a competitor. 389 F.2d at 852. Luria Brothers appealed this court's finding of a violation of F.T.C. Act § 5, but not the finding of a violation of Clayton Act § 7. Certiorari was denied on October 14, 1968. 393 U.S. 829, 89 S.Ct. 94, 21 L.Ed. 2d 100 (1968).

The district court opinion in the present case, relying on this court's opinion in New Jersey Wood Finishing Co. v. Minnesota Mining & Manufacturing Co., 332 F.2d 346, 359 (3d Cir. 1964), aff'd, 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965), determined that F.T.C. proceedings to enforce the F.T.C. Act cannot toll the statute of limitations, but F.T.C. proceedings to enforce the Clayton Act may. It therefore found the 1954 F.T.C. proceeding against Luria Brothers, in alleging Clayton Act § 7 violations, tolled the statute of limitations. It further held the statute was tolled until October 14, 1968, the date when certiorari was denied, even though only the F.T.C. Act violation was appealed from our decision.[4]

In determining on what date the statute was originally tolled, the district court reasoned that F.T.C. proceedings could not have such an effect until January 1, 1956, the date on which various amendments to Section 5 of the Clayton Act became effective.[5] The court thus barred all claims for damages accrued before January 1, 1952, four years before the statute was tolled. The district court refused to find the statute tolled on any other date for any of the named defendants on the grounds advanced that individuals cannot be sued under the Clayton Act or that the named corporate defendants were not in the scrap metal business when the F.T.C. proceeding began.

Defendants contend that the district court order cannot be sustained, because (1) as held by the district court, F.T.C. proceedings to enforce the F.T.C. Act do not suspend the running of the statute of limitations; and (2) contrary to the

---

3. The current appellee in this suit, Luria Steel & Trading Company is in no way affiliated with Luria Brothers & Company, the corporation investigated by the F.T.C.

4. Defendants do not challenge the district court's determination that the statute was tolled until certiorari was denied, and not just until May 28, 1968, which was 90 days after filing of the Third Circuit opinion, and thus the final date on which appeal of the Clayton Act finding was possible. The district court reasoned "that once an FTC proceeding to enforce Clayton Act Section 7 has been instituted, the statute of limitations is tolled until the proceeding is finalized and not merely until the Clayton Act aspects are finalized."

5. The 1955 amendment to Clayton Act § 5 actually became effective on January 7, 1956, six months after its July 7, 1955, enactment. It changed the language "any suit or proceeding in equity or criminal prosecution" to its present form of "any civil or criminal proceeding." The district court reasoned that an F. T.C. proceeding would not have tolled the statute of limitations before the amendment because the proceeding did not conform to the pre-amendment language, but that F.T.C. proceedings did conform to the post-amendment language and thus tolled the statute even for proceedings instituted prior to the amendment's enactment. It, however, held that the statute was not tolled retroactively as of the date the F.T.C. proceeding began; but, rather, that the statute was tolled as of the date the amendment became effective.

holding of the district court, F.T.C. proceedings begun in 1954 to enforce violations of the Clayton Act could not suspend the running of the statute. In support of the second contention, appellants rely on this court's opinion in *New Jersey Wood, supra,* 332 F.2d at 348. They note that until 1959, when the Finality Act was passed by Congress, 73 Stat. 243 (1959), 15 U.S.C. § 21, Commission orders based on Clayton Act violations were not enforceable until approved by a court of appeals. They argue that before 1959, F.T.C. proceedings were therefore not "civil or criminal proceeding[s]" which under Section 5(b) of the Clayton Act suspended the running of the statute of limitations. And, they argue that passage of the Finality Act of 1959 did not transform proceedings begun before that time into "civil or criminal proceedings." Federal Trade Commission v. Jantzen, Inc., 386 U.S. 228, 87 S.Ct. 998, 18 L.Ed.2d 11 (1967).

Plaintiffs contend that the statute was tolled in 1954 on the basis either (1) that F.T.C. proceedings to enforce the F.T.C. Act tolled the statute, or (2) F.T.C. proceedings to enforce the Clayton Act tolled the statute.

## II

■ Consideration of whether the statute of limitations was tolled in 1954 by reason of the F.T.C.'s proceeding to enforce either F.T.C. Act § 5 or Clayton Act § 7 must begin with the Supreme Court's opinion in Minnesota Mining & Manufacturing Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965). The holding of New Jersey Wood was that an F.T.C. proceeding begun in 1960, alleging violations of Clayton Act § 7, tolled the statute of limitations pursuant to Clayton Act § 5(b). The holding in *New Jersey Wood* does not necessarily control the present case because it did not deal with F.T.C. proceedings brought to enforce violations of the F.T.C. Act, nor did it deal with F.T.C. proceedings brought to enforce violations of the Clay-

ton Act before 1959, i. e., before passage of the Finality Act.

The Supreme Court opinion, nonetheless, sheds light on the question whether F.T.C. proceedings to enforce the F.T.C. Act can toll the statute. The Court did not hint in any way that F.T.C. proceedings under the F.T.C. Act had any different tolling effect than those pursuant to the Clayton Act. The Court interpreted Clayton § 4B and its tolling provision in light of "the one element of congressional intention which is plain on the record—the clearly expressed desire that private parties be permitted the benefits of prior government actions." 381 U.S. at 320, 85 S.Ct. at 1478. In further determining whether the F.T.C. proceedings alleging Clayton § 7 violations in that case tolled the statute for the particular private action involved, the Court found the F.T.C. proceedings had such an effect although the F.T.C. had alleged merely that Minnesota Mining's conduct *"may* substantially lessen competition while the latter [New Jersey Wood] asserts activity that has *actually* done so." Thus, said the Court, Clayton § 4B applies because "[t]hat clause provides for tolling as long as the private claim is based 'in part on any matter complained of' in the government proceedings." 381 U.S. at 323, 85 S.Ct. at 1480.

In *New Jersey Wood* the Supreme Court, of course, did not have to deal with the explicit claim that an F.T.C. proceeding alleging violations of F.T.C. § 5 can toll the statute. Subsequent cases in other federal courts, however, have squarely faced that issue, and have found the statute may be tolled. The Seventh Circuit held in Rader v. Balfour, 440 F.2d 469, 473 (7th Cir. 1971):

Although a supportable distinction could be drawn between an FTC proceeding authorized by the antitrust laws to deal with violations thereof and an FTC proceeding for a cease and desist order aimed against alleged conduct which involves either an existing or an incipient violation of the

antitrust laws but brought under a provision of the FTC act authorizing proceedings against a broader range of conduct, we conclude that the policy factors deemed controlling in *Minnesota Mining* are present and controlling here as well. Therefore, we construe 15 U.S.C. § 16(b) so that an FTC proceeding brought under 15 U.S.C. § 45 [F.T.C. Act § 5] suspends the running of the statute of limitations if the proceeding is directed at alleged conduct which appears to involve an existing or incipient violation of the antitrust laws.

We agree. *Accord,* In re Antibiotic Antitrust Actions, 333 F.Supp. 317, 319–320 (S.D.N.Y.1971); Lippa's Inc. v. Lenox, Inc., 305 F.Supp. 182 (D.Vt.1969); contra, Laitram Corp. v. Deepsouth Packing Co., 279 F.Supp. 883 (E.D.La.1968).

Defendants argue that this court rejected the reasoning of *Rader* and made a sharp distinction between F.T.C. proceedings to enforce the F.T.C. and Clayton Act in its opinion in *New Jersey Wood,* prior to the appeal to the Supreme Court. In reaching our conclusion in *New Jersey Wood* that F.T.C. proceedings to enforce the Clayton Act do toll the statute, this court noted that Clayton Act § 7 is an "antitrust law," while F.T.C. Act § 5 is not. 332 F.2d at 350. In further discussing the tolling statute, we emphasized the "affirmative statutory distinction between FTC proceedings under the FTC Act and under the Clayton Act." 332 F.2d at 359. It was on the basis of these comments that the district court felt constrained [6] to hold that F.T.C. proceedings under the F.T.C. Act could not toll the statute, which speaks in terms of "proceeding[s] . . . to prevent, restrain or punish violations of any of the *antitrust laws.*" [Emphasis added.] 15 U.S.C. § 16(b).

Our decision in *New Jersey Wood* discusses the distinction between Clayton Act violations and violations of F.T.C. Act § 5:

> Purposefully left broad and generally undefined (as to what constituted an "unfair method of competition" or an "unfair practice"), Section 5 proceeded on the idea of an administrative body of experts (the FTC) which, given a flexible standard of judgment, would discover and prevent use of such practice before it worked a Sherman violation . . . .
>
> Within this area of "unfair methods of competition", the FTC Act and the Clayton Act overlap . . . . These "unfair methods of competition" (later amended to include "unfair * * * practices"), whether prohibited specifically under the Clayton Act, or generally under the FTC Act, were to be restrained according to a congressional design.

332 F.2d at 351–352. In discussing the distinctions between Clayton and F.T.C. Act violations, however, this court was not concerned directly with whether the distinctions provided a basis for holding that F.T.C. proceedings to enforce the F.T.C. Act cannot toll the statute of limitations, while F.T.C. proceedings to enforce the Clayton Act may. We decline to pursue the dicta in *New Jersey Woods* to the conclusion defendants contend it must lead, namely that the distinction between F.T.C. and Clayton violations mandates differing results on* the question of whether the statute is tolled.

Our reference in *New Jersey Wood* to the "affirmative statutory distinction" between F.T.C. proceedings to enforce the F.T.C. Act and the Clayton Act was a reference to a statutory distinction which had existed before the Finality Act of 1959 made F.T.C. orders in connection with Clayton Act violations final without court enforcement. This court discussed that distinction in con-

---

6. The district court stated:
 While we are impressed with the reasoning expressed in the above three cases [*Rader, In re Antibiotic,* and *Lippa's*], we are con-

strained to follow the apparent distinction recognized in the *New Jersey Wood* case. 336 F.Supp. at 1240.

nection with Clayton Act § 5(a), 15 U.S. C. § 16(a), dealing with use of F.T.C. findings of violations as prima facie evidence in private suits. We said that the rule of Proper v. John Bene and Sons, Inc., 295 F. 729 (E.D.N.Y.1923), that F.T.C. findings of F.T.C. Act violations could not be used as prima facie evidence was not determinative of the issue of whether F.T.C. findings of Clayton Act violations could be so used. We distinguished *Proper* because in 1923 F.T.C. findings were not final nor could they be enforced without judicial action. Thus the findings could not be a "final judgment or decree," which is what Clayton Act § 5(a) requires before the findings can be used as prima facie evidence. By 1964 when *New Jersey Wood* was written, F.T.C. findings of both F.T.C. Act and Clayton Act violations were final and enforceable without court order. Thus, we said cases which continued to follow the *Proper* rule after 1959 failed to recognize the "affirmative statutory distinction" between finality of F.T.C. proceedings under the F.T.C. Act and the Clayton Act, which had existed between 1938 and 1959,[7] and which had been recognized in cases such as Brunswick-Balke-Collender Co. v. American B. & B. Corp., 150 F.2d 69, 74 (2d Cir. 1945).

Our discussion in *New Jersey Wood* of Clayton Act § 5(a)'s prima facie evidence rule is not applicable to the question in issue here of whether Clayton Act § 5(b)'s tolling provision applies for F.T.C. proceedings pursuant to the F.T.C. Act. Clayton Act § 5(b), unlike § 5(a), does not speak in terms of "final judgment or decree;" it requires only "civil or criminal proceeding[s] . . . instituted by the United States." As the Supreme Court emphasized in its affirmance of our holding in *New Jersey Wood:*

> § 5(b) tolls the statute of limitations set out in § 4B from the time suit is instituted by the United States re-

gardless of whether a final judgment or decree is ultimately entered. . . .

When we turn from the express language of these two statutory provisions to the congressional policies underlying them, it becomes even more apparent that the applicability of § 5(a) to Federal Trade Commission actions should not control the question whether such proceedings toll the statute of limitations . . . .

This makes § 5(b) readily severable from § 5(a).

381 U.S. at 316–318, 85 S.Ct. at 1473.

In discussing the "affirmative statutory distinction" between F.T.C. Act and Clayton Act enforcement by the F.T.C. we did not, therefore, mean to imply that the distinction would govern determination of whether F.T.C. enforcement of the F.T.C. Act tolled the statute of limitations under Clayton Act § 5(b). The Supreme Court's affirmance of *New Jersey Wood* indicates clearly that we would be in error to pursue that statutory distinction discussed by us in *New Jersey Wood* to the conclusion suggested by defendants.

### III

 Having determined that F.T. C. proceedings alleging violations of F.T. C. § 5 may toll the statute of limitations, the next question is whether the F.T.C.'s 1954 proceedings against Luria Brothers had that effect on the present case. Resolution of that question must be made

> by a comparison of the two complaints. The test is whether the private action is based in part on matters of which the government complained.

Rader v. Balfour, 440 F.2d 469, 473 (7th Cir. 1971); cf. Minnesota Mining and Manufacturing Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 322–324, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965). We analyzed the first count of the F.T.C. complaint of violations of F.T.C. Act § 5

---

7. F.T.C. findings of F.T.C. Act violations were made final by the Wheeler-Lea Act of 1938, 52 Stat. 111 (1938), 15 U.S.C. § 45(g);

F.T.C. findings of Clayton Act violations were not made final until the Finality Act of 1959, 73 Stat. 243 (1959), 15 U.S.C. § 21.

in our affirmance of the Commission's finding of violations in Luria Brothers and Company v. F.T.C., 389 F.2d 847, 852 (3d Cir. 1968), as follows:

> Count I in substance charged that Luria and the other petitioning mills entered into a series of agreements whereby Luria was to act as the exclusive broker for the petitioning mills. It charged that these agreements led to a restraint of trade and tended to create a monopoly in the scrap metal market in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). Count I also charged that the petitioning mills conspired to effect a monopoly in Luria, that Luria and others restrained trade in export scrap, that petitioners engaged in coercive tactics, and that Luria acquired various competing companies—all in violation of Section 5.

The present complaint charges Luria with violations of Sherman Act §§ 1 and 2 and Clayton Act §§ 3 and 7 on the basis of the same agreements Luria had with various mills and Luria's same acquisitions of competitors. Since this complaint charges conduct which appears to have been involved in the prior proceeding, the statute was tolled by the F.T.C. proceeding initiated on January 19, 1954. The F.T.C. proceeding was "a civil or criminal proceeding instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws," and the present private action is "based in whole or in part on any matter complained of in said proceeding." 15 U.S.C. § 16(b).

We therefore disagree with the dicta in the district court's opinion that an F.T.C. proceeding pursuant to F.T.C. Act § 5 cannot toll the statute of limitations under Clayton Act § 5(b). The F.T.C. proceedings against Luria Brothers did suspend running of the statute on January 19, 1954.[8] Therefore, as plaintiffs here did institute this action within one year after the completion of the F.T.C. proceeding, they may sue for all damages accrued since January 19, 1950, four years before the statute's running was suspended, in accordance with the four year statute of limitations in Clayton Act § 4B, 15 U.S.C. § 15b.

Although we find that the statute of limitations should have been tolled on January 19, 1954, rather than January 1, 1956, as the district court held, we do not disturb the judgment of the district court. There was no cross-appeal by plaintiffs, and thus we are bound by the principle of Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 191–192, 57 S.Ct. 325, 328, 81 L.Ed. 593 (1937), that:

> "Where each party appeals each may assign error, but where only one party appeals the other is bound by the decree in the court below, and he cannot assign error in the appellate court, nor can he be heard if the proceedings in the appeal are correct, except in support of the decree from which the appeal of the other party is taken."

---

8. The district court tolled the statute on the basis of the F.T.C. proceeding for Clayton Act violations. Although the F.T.C. proceeding commenced January 19, 1954, the district court said it could not have tolled the statute until January 1, 1956. See footnote 5 *supra*. We find no such infirmity in the F.T.C. proceedings as of January 19, 1954.

In revising Clayton Act § 5 in the 1955 amendment, Congress recognized that the merger of law and equity in the Federal Rules of Civil Procedure in 1938 made anachronistic § 5's reference to "any suit or proceeding in equity;" thus, it amended the language to read "any civil or criminal proceeding." The amendment did not therefore create any substantive change in Clayton Act § 5's characterization of F.T.C. proceedings.

In holding in *New Jersey Wood* that F.T.C. proceedings tolled the statute of limitation, the Supreme Court made no distinction between the post and pre-1956 language. See majority opinion, 381 U.S. at 320–321, and dissent, 381 U.S. at 327, 85 S.Ct. 1473. The two opinions disagreed, not on the basis of what the 1956 amendment meant, but on construction of legislative history in 1914. Implicit in the majority opinion is the conclusion that an F.T.C. proceeding was not only a "civil proceeding" under the post-1956 statute, but also a "proceeding in equity" under the pre-1956 statute.

*See also* Conover v. Montemuro, 477 F.2d 1073 at 1076–1078 (3d Cir. 1973). For the same reason, we need not reach the issue argued by plaintiffs that because the federal statute was not in existence in 1954 the six year statute of limitations of the Commonwealth of Pennsylvania, 12 P.S. § 31, rather than the four year federal limitation, applies. Chatanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906); Philco Corp. v. Radio Corporation of America, 186 F.Supp. 155 (E.D.Pa.1960).

Because we have found that the statute of limitations was tolled by the F.T. C. 1954 proceedings on the basis of the allegations of violations of F.T.C. Act § 5, we need not reach the second issue raised by appellants—whether the statute could also have been tolled by the allegations of Clayton Act § 7 violations.[9]

**IV**

██ Defendants further urged in their motion for summary judgment and on appeal that even if the statute of limitations were tolled in 1954, it could not have been tolled as to the particular defendants in this case. They argue that the statute could not have been tolled (a) as to individual defendant William Luria because individuals cannot violate Clayton Act § 7, which speaks in terms of what "no corporation" can do, 15 U.S.C. § 18; or (b) as to the four named corporate defendants because none were involved in the scrap metal business in 1954 when F.T.C. proceedings began against Luria Brothers. We find no merit in either of these contentions.

William J. Luria was an officer of Luria Brothers in 1954. He is presently an officer of Luria Brothers & Com-

pany, Inc., the Ogden subsidiary which operates the old Luria business. Although Luria, as an individual, could not violate Clayton Act § 7, Bender v. Hearst Corp., 152 F.Supp. 569, 578–579 (D. Conn.1957), aff'd 263 F.2d 360 (2d Cir. 1959), he could have violated F.T.C. Act § 5 which applies to any person, partnership or corporation. As we have held that the statute was tolled by the Commission's proceedings under the F.T.C. Act § 5, the statute was certainly tolled as to Luria. We express no opinion with regard to whether the statute could have been tolled as to Luria on the basis of Clayton Act proceedings by the F.T.C.

██ Defendants' argument with respect to the corporate defendants is based on the holding of Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), that the statute may be tolled not only against defendants in the Government proceedings, but also against non-defendants who participated in the allegedly illegal conduct. Defendants argue that it is an obvious corollary to that rule that if a corporation was not even in the business in which wrongdoing occurred when Government proceedings began, it could not have been a participant in the illegal activities. No such obvious corollary exists. This argument ignores the plain statutory language of the tolling provision of Clayton Act § 5(b), which provides for tolling "in respect of every private right of action . . . based in whole or in part on any matter complained of" in the Government proceeding. 15 U.S.C. § 16(b). Plaintiffs have sued Ogden and its three subsidiaries for alleged antitrust violations which are nearly identical with those investigated by the F.T.C.. They claim a private right of

9. The F.T.C. Clayton Act § 7 allegation concerned Luria's purchases of competing brokers. This Clayton Act § 7 violation is also alleged in the private suit *sub judice*. We need not reach the issue of whether F.T.C. proceedings pursuant to the Clayton Act in 1954 could have tolled the statute with regards to this aspect of the private suit, because

Luria's purchase of competitors was also alleged by the F.T.C. in 1954 to be an F.T.C. Act § 5 violation. The F.T.C. Act allegation therefore tolled the statute with regards to these acquisitions, whether or not the Clayton Act allegations could have done so independently.

action against Ogden and its subsidiaries on the basis of their purchase, of, and continued operation of, the original Luria Brothers & Company assets subsequent to initiation of F.T.C. proceedings. At this point in the instant litigation, there is no need for us to consider the effects of the stipulation entered into between Ogden and the F.T.C. in 1956 making the new Ogden subsidiary operating Luria's assets a respondent to the F.T.C. proceeding. Whether or not Ogden or its subsidiaries are legally liable for damages either before or after their purchase of Luria, because of the stipulation or more generally because they assumed liability for Luria's actions or continued allegedly illegal actions after the purchase, is an issue of liability yet to be resolved. We express no opinion as to liability of any of the defendants. All that we hold at the present time is that the statute of limitations was tolled in 1954 because of the F.T.C. proceeding. Issues of liability will be determined upon remand.

The judgment of the district court will be affirmed.