In re COORDINATED PRETRIAL PROCEEDINGS IN PETROLEUM PRODUCTS ANTITRUST LITIGATION.

No. MDL 150 AWT.

United States District Court, C.D. California.

Dec. 13, 1991.

---

Michael I. Spiegel, Wayne M. Liao, Charles M. Kagay, Spiegel, Liao & Kagay, San Francisco, Cal., Grant Woods, Atty. Gen. of State of Ariz., H. Leslie Hall, Jeri K. Auther, Asst. Attys. Gen., Consumer Protection & Antitrust Section, Phoenix, Ariz., for State of Ariz.

Daniel E. Lungren, Atty. Gen. of State of Cal., Thomas Dove, Deputy Atty. Gen., San Francisco, Cal., Mary Elizabeth Alden, Deputy Atty. Gen., Sacramento, Cal., Lawrence R. Tapper, Deputy Atty. Gen., Los Angeles, Cal., Sanford N. Gruskin, Asst. Atty. Gen., San Diego, Cal., for State of Cal.

David Frohnmayer, Atty. Gen. of State of Or., Andrew E. Aubertine, Asst. Atty. Gen., Dept. of Justice, Financial Fraud Section, Salem, Or., for State of Or.

Kenneth O. Eikenberry, Atty. Gen. of State of Wash., John R. Ellis, Deputy Atty. Gen., Jon P. Ferguson, Asst. Atty. Gen., Seattle, Wash., for State of Wash.

Otis Pratt Pearsall, Philip H. Curtis, Bruce R. Kelly, Arnold & Porter, New York City, Ronald C. Redcay, Matthew T. Heartney, Arnold & Porter, Donald A. Bright, Thomas H. Reilly, Atlantic Richfield Co., Los Angeles, Cal., for Atlantic Richfield Co.

Robert A. Mittelstaedt, Pillsbury, Madison & Sutro, Washington, D.C., Roderick M. Thompson, Pillsbury, Madison & Sutro, Paul R. Truebenbach, Chevron Corp., San Francisco, Cal., for Chevron Corp.

Howard J. Privestt, David A. Destino, Baker & Hostetler, McCutchen Black, Los Angeles, Cal., John H. Lewis, Jr., Jay H. Calvert, Jr., Joseph W.G. Fay, Morgan, Lewis & Bockius, Philadelphia, Pa., John R. Rebman, J. Anthony Chavez, Exxon Corp., Houston, Tex., for Exxon Corp.

Andrew J. Kilcarr, Maureen O'Bryan, Janet L. McDavid, Hogan & Hartson, Washington, D.C., Donald J. Frickel, Mobil Oil Corp., Fairfax, Va., for Mobil Oil Corp.

William R. O'Brien, Alan M. Grimaldi, Robert M. Bruskin, Howrey & Simon, Washington, D.C., Fred H. Bartlit, Jr., Kirkland & Ellis, Chicago, Ill., Jeffrey S. Davidson, Philip S. Swain, Todd A. Gale, Tony L. Richardson, Kirkland & Ellis, Los

Angeles, Cal., Raymond V. McCord, Shell Oil Co., Universal City, Cal., for Shell Oil Co.

Barry Willner, Milton J. Schubin, Randolph S. Sherman, Kaye, Scholer, Fierman, Hayes & Handler, New York City, Robert D. Wilson, Robert E. Fuller, Texaco Inc., White Plains, N.Y., Leslie C. Randall, Texaco Inc., Universal City, Cal., for Texaco, Inc.

Darryl Snider, Daniel J. Tyukody, Jr., Brobeck, Phleger & Harrison, Los Angeles, Cal., William J. Taylor, Brobeck, Phleger & Harrison, San Francisco, Cal., Patricia Burrall Woolls, UNOCAL Corp., Los Angeles, Cal., for Union Oil Co. of California.

## MEMORANDUM OPINION

TASHIMA, District Judge.

These are four antitrust actions, brought by the states of California, Arizona, Oregon and Washington. The complaints were filed in 1975, 1976 and 1977.[1] Defendants are seven of the major oil companies: Atlantic Richfield Company, Chevron Corporation, Exxon Corporation, Mobil Oil Corporation, Shell Oil Company, Texaco Inc., and Union Oil Company of California. Plaintiffs charge a conspiracy to fix the retail price of gasoline and other refined petroleum products.[2] Defendants have moved for summary judgment on the issue of whether or not § 5(i) of the Clayton Act, 15 U.S.C. § 16(i), can be invoked by plaintiffs to toll the running of the statute of limitations. Defendants claim that it cannot; plaintiffs claim that it can. As explained below, defendants have the better of the argument; therefore, the court grants their motion for summary judgment.

1. California's complaint was filed on June 25, 1975, Arizona's on July 22, 1976, Oregon's on February 4, 1977, and Washington's on August 15, 1977. Each state sues *parens patriae*, as well as on its own behalf and on behalf of a class of local governmental entities located within its borders.

2. California also charges that the prices at which defendants purchased crude oil were fixed by them (California being a seller of crude oil). However, that claim has been settled or severed for separate trial and is not before the court on this motion.

## BACKGROUND

### The Statute

Section 5(i) of the Clayton Act (§ 5(i)) provides:

Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, ... the running of the statute of limitations in respect of every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter....

15 U.S.C. § 16(i).

### The Complaints

All of the complaints in these actions are similar. They charge defendants with a conspiracy in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, in that they conspired to restrain trade in the production, transportation and refining of crude oil and the distribution and sale of refined oil products, including gasoline. Defendants are charged specifically with fixing the price of refined oil products. The complaints also charge a conspiracy to monopolize in violation of § 2 of the Sherman Act, 15 U.S.C. § 2. No relevant geographic market is alleged.[3]

Under § 4(b) of the Clayton Act, the statute of limitations in an antitrust action is four years. 15 U.S.C. § 15(b). However, plaintiffs seek damages back to 1958. They rely on § 5(i) and on the doctrine of fraudulent concealment[4] to toll the running of the statute of limitations.[5]

3. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432 (9th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991), for a more detailed summary of plaintiffs' claims.

4. Defendants have made a companion motion for summary judgment directed to the applicability of this doctrine to these actions.

5. Application of § 5(i) would add approximately two years to California's damage period, three years to Arizona's, three and a half years to Oregon's and four years to Washington's, with-

*The FTC Exxon Case*

On July 18, 1973, the Federal Trade Commission (FTC) instituted an administrative proceeding entitled *In the Matter of Exxon Corp., et al.*, FTC Docket No. 8934 (the *Exxon* case), against eight of the major oil companies under § 5 of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45. Included among the respondents in the *Exxon* complaint were all defendants in these actions, except Union Oil Company of California. *Exxon* was a "shared monopoly" case. Respondents were charged with maintaining a "noncompetitive market structure" in crude oil refining. They were charged with "pursuing a common course of action" with respect to a number of anticompetitive practices. They were also accused of collectively "exercising monopoly power." *Exxon* did not charge conspiracy, collusion or concert of action.[6]

Most importantly, for our purposes, the relevant geographic market was alleged to encompass[ ] the Eastern and Gulf Coast states, together with parts of the Mid–Continent area of the United States, and relevant submarkets thereof, in which respondents' conduct in maintaining a noncompetitive market, as alleged herein, has operated to prevent free and open competition.[7]

## DISCUSSION

■ Section 5 of the FTC Act prohibits "unfair methods of competition." It is not coextensive with the antitrust laws. For although conduct prohibited by the antitrust laws are included within the reach of § 5, *see FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 454–55, 106 S.Ct. 2009, 2015–16, 90 L.Ed.2d 445 (1986); *FTC v. Cement Institute*, 333 U.S. 683, 691–92, 68 S.Ct. 793, 798–99, 92 L.Ed. 1010 (1948), § 5's proscription casts a wider net. *Indiana Fed'n of Dentists*, 476 U.S. at 454, 106 S.Ct. at 2015; *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244, 92 S.Ct. 898, 905, 31 L.Ed.2d 170 (1972). However,

there is no doubt that the FTC is authorized to enforce the antitrust laws and, in a proper case, a FTC enforcement action will toll the statute of limitations under § 5(i). *Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.*, 381 U.S. 311, 321–22, 85 S.Ct. 1473, 1478–79, 14 L.Ed.2d 405 (1965).

The issue, therefore, is whether and under what circumstances a FTC agency complaint charging violations of § 5 of the FTC Act is a proceeding "to prevent, restrain, or punish violations of any of the antitrust laws," as required by § 5(i).

### A. The Primacy of the Plain Meaning Rule

■ The first rule of statutory construction is to look to the language of the statute itself. If the meaning of a statute is clear from a reading of the words themselves, it is unnecessary to look to secondary aids to statutory construction. *E.g.*, *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *see also Ardestani v. INS*, —— U.S. ——, ——, 112 S.Ct. 515, ——, 116 L.Ed.2d 496 (1991); *INS v. Cardoza–Fonseca*, 480 U.S. 421, 432 & n. 12, 107 S.Ct. 1207, 1213 & n. 12, 94 L.Ed.2d 434 (1987). In fact, the Supreme Court has applied this very rule to § 5(i). *See Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330–31, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978) (when government intervenes in a proceeding, it is not a proceeding "instituted by the United States," as required by § 5(i)).

■ The term "antitrust laws," as used in the Clayton Act, is defined by § 1 of the Act. 15 U.S.C. § 12. That definition does *not* include the FTC Act in its listing of the "antitrust laws." Thus, under the plain wording of the Clayton Act, an action brought under the FTC Act is not an action to enforce the antitrust laws. *See Nash-*

---

out consideration of any tolling effect due to the alleged fraudulent concealment.

**6.** The FTC's complaint is set forth in *In re Exxon*, 98 F.T.C. 453, 454–59 (1981).

**7.** *Id.*, 98 F.T.C. at 456, ¶ 12.

*ville Milk Co. v. Carnation Co.*, 355 U.S. 373, 375–76, 78 S.Ct. 352, 353–54, 2 L.Ed.2d 340 (1958); *Yamaha Motor Co. v. FTC*, 657 F.2d 971, 982 (8th Cir.1981), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1768, 72 L.Ed.2d 174 (1982).

B. *Antitrust Enforcement and § 5 of the FTC Act*

■ Should § 5(i) nevertheless be construed, as a matter of antitrust policy, to include proceedings instituted under § 5 of the FTC Act within its coverage because of the overlap between the antitrust laws and § 5 of the FTC Act? Whatever the answer should be in some other context,[8] in the circumstances here, the answer must be No.

The conduct charged in the *Exxon* complaint could not survive a motion to dismiss under F.R.Civ.P. 12(b)(6) for failure to state a claim under the antitrust laws. Clearly, *Exxon* represented a deliberate choice by the FTC to proceed under § 5 for that reason. The *Exxon* complaint does not charge a conspiracy or an agreement, as required by § 1 of the Sherman Act. The noncompetitive market structure of the industry is alleged to have resulted from respondents' "pursuing a common course of action." This charges nothing more than parallel action. At most, giving the complaint a liberal reading, only a charge of conscious parallelism could be inferred.

Then or since, parallel conduct alone has not been deemed sufficient to constitute a conspiracy or agreement under § 1 of the Sherman Act. *E.g., Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 541, 74 S.Ct. 257, 259, 98 L.Ed. 273 (1954) ("conscious parallelism" has not yet read conspiracy out of the Sherman Act); *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1359 (9th Cir.1976), *cert. denied*, 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977) (conspiracy not established by parallel pricing behavior, absent "actual agreement or mutual consent"). Some evidence

of concerted action, in addition to conscious parallelism, is necessary to sustain a § 1 charge. *See United States v. United States Gypsum Co.*, 438 U.S. 422, 435, 98 S.Ct. 2864, 2872, 57 L.Ed.2d 854 (1978) (conduct having an effect on price, *without more*, insufficient to sustain Sherman Act conviction); *cf. United States v. Container Corp.*, 393 U.S. 333, 337–38, 89 S.Ct. 510, 512–13, 21 L.Ed.2d 526 (1969) ("casual" or informal agreement sufficient). In this very case, the Ninth Circuit has recognized that "interdependent pricing," *i.e.*, conscious parallelism, *"standing alone*, is generally considered insufficient to establish a violation of the Sherman Act." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d at 444 (emphasis in original).

■ In addition to attacking the common course of action which gave rise to the noncompetitive structure of the petroleum industry, the *Exxon* complaint charged that respondents, as a group, "exercised monopoly power in the refining of petroleum products." This theory of *shared* monopoly power was then, and still is, beyond the reach of § 2 of the Sherman Act. This venture into the outer reaches of § 5 of the FTC Act came to an inconclusive end. *In re Exxon*, 98 F.T.C. 453 (1981) (dismissing action).[9] Antitrust doctrine has yet to adopt the theory that a shared monopoly is a violation of the antitrust laws. *See Harkins Amusement Enters., Inc. v. General Cinema Corp.*, 850 F.2d 477, 490 (9th Cir. 1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 817, 102 L.Ed.2d 806 (1989) (recognizing that shared monopoly theory was "novel" and holding that no § 2 claim was stated "in this case," but declining to adopt a general rule); *cf. Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546–49 (9th Cir.1991) (rejecting "monopoly leveraging" doctrine under § 2).

■ Because neither a structurally noncompetitive industry, assertedly caused by

---

**8.** The court does not address the hypothetical case where the conduct charged to be in violation of § 5 of the FTC Act also states a claim under the antitrust laws. Two such cases are discussed, *infra,* at p. 486.

**9.** The FTC's only other foray into the "shared monopoly" area was also dismissed. *In re Kellogg Co.,* 99 F.T.C. 8 (1982).

a non-conspiratorial, but common course of action, nor a sharing by numerous competitors of "monopoly" power sounds in antitrust, the court concludes that, even assuming *arguendo* that under some circumstances a proceeding under § 5 of the FTC Act could be construed as a proceeding to restrain a "violation of any of the antitrust laws" within the meaning of § 5(i), the *Exxon* complaint was not such a proceeding.

The cases relied on by plaintiffs do not compel a contrary result. In *Rader v. Balfour*, 440 F.2d 469, 473 (7th Cir.), *cert. denied*, 404 U.S. 983, 92 S.Ct. 444, 30 L.Ed.2d 367 (1971), the court construed § 4B of the Clayton Act, § 5(i)'s predecessor, as tolling the statute of limitations when a proceeding is brought under § 5 of the FTC Act. However, the court was careful to note that the FTC proceeding involved "either an existing or incipient violation of the antitrust laws." *Id.* at 472, 473. And it held that tolling applied only "if the proceeding is directed at alleged conduct which appears to involve an existing or incipient violations of the antitrust laws." *Id.* at 473.

The same circumstances obtained in *Luria Steel & Trading Corp. v. Ogden Corp.*, 484 F.2d 1016 (3d Cir.1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 110 (1974). There, the underlying FTC proceeding alleged violations of § 7 of the Clayton Act (*i.e.*, of the "antitrust laws"), as well as of § 5 of the FTC Act. *Id.* at 1020. Like *Rader*, on which it relied, it is clear that the FTC complaint in *Luria Steel* alleged violations of the antitrust laws. *Id.* at 1023. As stated, the *Exxon* complaint does *not* charge a violation of the antitrust laws. Thus, the cases relied on by plaintiffs do not detract from the court's holding in the case at bench.

### C. *The Absence of Any Factual Overlap*

■ There is also another reason why § 5(i) cannot be invoked in this action. Section 5(i) requires that the private or state action be "based in whole or in part" on any matter complained of "in the government action." Here there is no overlap whatsoever because of the definition in *Exxon* of the relevant geographic market. As stated earlier, the relevant geographic market in *Exxon* excluded any area west of the Rockies. *Exxon*'s geographic market definition necessarily implies that the West Coast, including Arizona, was *not* included in the geographic market in which the alleged noncompetitive structure existed. On the other hand, the complaints here necessarily imply, although they do not allege a geographic market, that the asserted conduct in violation of the Sherman Act occurred on the West Coast. Any anticompetitive conduct which might have occurred in the *Exxon* geographic market would be irrelevant to these complaints, *i.e.*, plaintiffs are not required to prove *any* Eastern, Gulf Coast or Mid–Continent acts in order to prevail in these cases.

Whether or not the private action "is based in whole or in part" on the government's action is to be determined from a comparison made on the face of the respective complaints. *See Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. at 331, 98 S.Ct. at 2375; *Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, 832 (9th Cir. 1983). A comparison of the complaints unequivocally demonstrates that these actions are not based, in whole or in part, on the *Exxon* complaint.

### CONCLUSION

For each of the reasons discussed above, the court concludes on the basis of the uncontroverted record that, under § 5(i) of the Clayton Act, the *Exxon* proceeding did not toll the running of the statute of limitations in these cases. Summary judgment is granted to defendants on this issue.

IT IS SO ORDERED.