**In re Coordinated Pretrial Proceedings in ANTIBIOTIC ANTITRUST ACTIONS.**

**M 19–93A**

**and**

**the following actions: All Cases.**

United States District Court.

S. D. New York.

July 30, 1971.

## APPLICABILITY OF SECTIONS 5(a) AND 5(b) OF THE CLAYTON ACT

MILES W. LORD, District Judge (By Assignment).

The questions now before the court concern the effect of the Government's prior proceedings against these defendants [1] on the present private treble damage actions. More specifically, the questions are whether, pursuant to § 5(b) of the Clayton Act, 15 U.S.C. § 16(b),[2] the prior proceedings tolled the running of the four-year statute of limitation, § 4B of the Clayton Act, 15 U.S.C. § 15b, and whether, pursuant to § 5(a) of the Clayton Act, 15 U.S.C. § 16(a),[3] the judg-

---

1. The defendants are the American Cyanamid Co., Bristol-Myers Co., Pfizer, Inc., Squibb Beech-Nut, Inc. and Olin Corp., and The Upjohn Co.

2. Section 5(b) states:

Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however,* That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 of this title is suspended hereunder,

any action to enforce such cause of action shall be forever barred unless commenced either within the period or suspension or within four years after the cause of action accrued.

3. Section 5(a) states:

A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* That this section shall not apply to consent judgments

ment in one of those proceedings is entitled to prima facie effect in these actions.

The decision of these questions requires a familiarity with the facts of the prior proceedings. After initial studies of one defendant's pricing policies on a specific product and of the antibiotic industry in general,[4] the Federal Trade Commission issued a complaint on July 28, 1958, charging all five of the defendants with violations of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, in connection with the sale of antibiotics. The Commission's initial decision finding all five defendants to have violated Section 5 was reversed on appeal. American Cyanamid Co. v. F. T. C., 363 F.2d 757 (6th Cir. 1966). On remand, the Commission found that two of the defendants, Pfizer and Cyanamid, had violated Section 5 and this result was affirmed by the Court of Appeals for the Sixth Circuit. Chas. Pfizer & Co. v. F. T. C., 401 F.2d 574 (6th Cir. 1968).

In the meantime an indictment was returned on August 17, 1961, against three of these defendants,[5] naming the other two as co-conspirators, charging violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. After trial to a jury, the verdict of guilty on all counts as to all three defendants was reversed on appeal, United States v. Chas. Pfizer & Co., 426 F.2d 32, modified 437 F.2d 957 (2d Cir. 1970). Certiorari has now been granted. United States v. Chas. Pfizer & Co., 402 U.S. 942, 91 S.Ct. 1617, 29 L.Ed.2d 110 (1971).

## I.

### Tolling of the Statute

The defendants apparently concede that in all cases but the farm cases and the foreign cases,[6] which they contend are not based on the prior Government actions, the statute of limitations was tolled by the institution of the criminal action in 1961. They contend, however, that the earlier FTC proceeding could not and did not toll the statute in any case.

### A. The FTC Proceedings

The defendants argue that since the prior FTC proceeding in this case was pursuant to § 5 of the FTC Act and since that section is not one of the "antitrust laws" as defined by § 1 of the Clayton Act, 15 U.S.C. § 12, Nashville Milk Co. v. Carnation Co., 355 U.S. 373, 375–376, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958), the proceeding does not satisfy the requirements of § 5(b).

Defendants' argument ignores the fact that § 5(b), unlike § 5(a), does not require that the prior action be one "under the antitrust laws," only that it be one "to prevent, restrain or punish violations

---

or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 15a of this title.

4. The Commission investigated Pfizer's pricing policies on Terramycin from 1951 to 1955 and conducted an investigation of the antibiotics industry which resulted in an "Economic Report on Antibiotics Manufacture," issued in June of 1958.

5. American Cyanamid, Pfizer and Bristol-Myers.

6. By the term "farm" cases, the court understands the defendants to be referring to those cases in which claims arising from the purchase of broad spectrum antibiotics for nonhuman use are asserted. These claims are now presented within the framework of three separate class actions: Midwest Veterinary Supply, Inc. v. American Cyanamid Co., 69 Civ. 1557 (wholesalers); E. J. Hoffert v. American Cyanamid Co., 70 Civ. 367 (veterinarians); Doughboy Industries, Inc. v. American Cyanamid Co., 69 Civ. 1558 (purchasers of broad spectrum antibiotics for nonhuman use directly from defendants or in the same form as originally sold by defendants). By the term "foreign cases," the court understands the defendants to be referring to two actions: Republic of Vietnam v. Chas. Pfizer & Co., 70 Civ. 877; State of Kuwait v. Chas. Pfizer & Co., 69 Civ. 4091. The fact that certain other cases, such as the actions by seven states and the competitor cases, may assert foreign or farm claims gives further support to the court's reading of the plaintiff's Pretrial Brief, advanced *infra*.

of any of the antitrust laws * * *.'' Influenced by this statutory language, two of the three courts facing this precise question have held the statute tolled by FTC proceedings under § 5 of the FTC Act where the purpose of those proceedings was "to prevent, restrain, or punish" violations of the antitrust laws. Rader v. Balfour, 440 F.2d 469 (7th Cir. 1971); Lippa's Inc. v. Lenox, Inc., 305 F.Supp. 182 (D.Vt.1969); *contra*, Laitram Corp. v. Deepsouth Packing Co., 279 F.Supp. 883 (E.D.La.1968).

 It is well-established that § 5 of the FTC Act includes within its terms a wide variety of conduct, including conduct condemned by §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, Times-Picayune Pub. Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); F. T. C. v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948). And it would be as arbitrary, in terms of the statutory policy of § 5(b), to hold that the tolling effect of a prior Government action turned on the statute under which it was initiated as it would be to hold that tolling depended upon the agency which initiated the action. Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 320–322, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965). Although the Supreme Court was not faced with this problem in *3M* since the FTC action was pursuant to § 7 of the Clayton Act, 15 U.S.C. § 18, its logic in holding that FTC proceedings, as well as action initiated by the Justice Department, could toll the statute supports the result reached here.

 The determinative factor in each case, then, is the type of conduct against which the proceeding is aimed. As was stated in Rader v. Balfour, *supra* 440 F.2d at 473, a § 5 FTC Act proceeding "suspends the running of the statute of limitations if the proceeding is directed at alleged conduct which appears to involve an existing or incipient violation of the antitrust laws." And the character of the earlier proceeding must be resolved by an examination of the FTC complaint. Turning to the earlier complaint against these defendants, a reading of its allegations clearly establishes that the defendants were charged with conduct violative of the antitrust laws [7] and that the proceeding therefore met the requirements of § 5(b).

### B. The Farm and Foreign Cases

 As earlier stated, the defendants argue that the running of the statute was not tolled in the farm and foreign cases because they are not "based in whole or in part on any matter complained of" in the prior proceedings.[8] It is settled that the proper method for determining this question, at least initially, see Rader v. Balfour, *supra* at 473, is to compare the allegations of the Government and private complaints. Leh v. General Petroleum Corp., 382 U.S. 54, 65, 86 S.Ct. 203, 15 L.Ed.2d 134 (1965). And for purposes of deciding this question, the court will consider the "Preliminary Pretrial Brief" submitted by the Plaintiff's National Steering Committee as a pleading amending the original complaints.

 The defendants contend that the farm and foreign cases involve markets and, to some extent, products not included in the prior proceedings. For example, both the FTC complaint and the criminal indictment are said to speak only of broad spectrum antibiotics for domestic human use. And relying on later findings and opinions in the FTC action and the development of the evidence at the criminal trial, the defendants argue that the focus of those proceedings was on tetracycline, a product manufactured predominantly for human use. Defendants also note that the sale

---

7. Paragraphs 7, 8, 9 and 10 of the complaint, attached to the opinion as Appendix A, allege the fraudulent procurement of the Conover Patent, the restraint of trade in antibiotics and the monopolization of that industry.

8. The defendants have not contended, and the court does not understand them to contend, that the cases other than the farm and foreign cases are not based on the prior proceedings.

of these products in foreign commerce was investigated by a separate grand jury almost three years after the return of the initial indictment and that no action was ever taken by that grand jury.[9]

Accepting the defendants' characterization of the FTC complaint and the criminal indictment, the essence of their argument is that the Government alleged antitrust violations only in the domestic human consumption market while the farm and foreign plaintiffs allege conspiracies only in the farm and foreign markets respectively.

A reading of the Plaintiff's Preliminary Pretrial Brief, however, indicates that the plaintiffs' theory of liability cannot be so neatly compartmentalized into foreign and domestic, human and agricultural markets. That brief alleges conspiratorial antitrust violations broader in scope than those alleged by the Government—violations which affected both the farm and human markets and had both domestic and international implications. In fact, the brief alleges a necessary interrelationship between these different aspects of the alleged conspiracy. For example, the plaintiffs allege that one of the preconditions to the entry of Bristol, Squibb and Upjohn into the conspiracy in all other markets was their agreement to refrain from the sale of broad spectrum antibiotics in the farm market.

Each plaintiff, then, is alleging broader violations of the anti-trust laws than did the Government and the question is whether they may still claim to be basing their actions on the prior proceedings. Although a treble damage plaintiff usually chooses to incorporate only a part of the Government case into his complaint, see, e. g., Leh v. General Petroleum Corp., *supra*, there is no logical reason why tolling should not also follow where the plaintiff incorporates the entire Government case and alleges more in addition. In both instances the overlap between the Government case and the private allegations suggests that valuable practical benefits may flow to the private plaintiff from tolling the statute. *Cf.* Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). The court therefore concludes that the farm and foreign cases, like all other cases now before the court, are based in whole or part on the prior FTC and criminal action.

The conclusion reached here is in no way inconsistent with the results reached in the two cases cited by defendants. Peto v. Madison Square Garden Corp., 384 F.2d 682 (2d Cir. 1967); 2361 State Corp. v. Sealy, Inc., 263 F.Supp. 845 (N.D.Ill.1967). In *Peto* the plaintiff alleged monopolization of the professional hockey industry by the defendants and claimed the tolling of the statute of limitations because of a prior Government action, United States v. Int'l Boxing Club of N. Y., 150 F.Supp. 397, aff'd, 358 U.S. 242, 79 S.Ct. 245, 3 L.Ed.2d 270 (1959). The Second Circuit rejected this claim stating that a comparison of the claims asserted in the two cases showed that different conspiracies were referred to, involving different sports and covering different periods of time. In the present case the Plaintiffs' Pretrial Brief indicates that the same conspiracies are alleged in the Government and private cases but that the private cases are concerned with the world-wide effect of the alleged conspiracy in both human and agricultural markets.

In 2361 State Corp. v. Sealy, Inc., the plaintiff, a mattress manufacturer who had formerly sold to Ward on a local ba-

---

9. The defendants advance the additional argument that the original complaints in these cases, which admittedly track the criminal indictment, evidence a "sham" reliance on the prior proceedings and should be disregarded. Leh v. General Petroleum Corp., *supra* at 59, 86 S.Ct.

203. Because the Court interprets the Plaintiffs' Preliminary Pretrial Brief as an amendment to these complaints and because the court has concluded that the actions, interpreted in this manner, are based on the prior proceedings, it is unnecessary to consider this argument.

sis, alleged a conspiracy between Ward and Sealy to prevent manufacturers, other than participants in Sealy's National Accounts Program, from selling to Ward. The district court, *sua sponte,* considered the applicability of § 5(b) to the case in light of a prior Government suit challenging certain territorial and pricing restrictions found in licensing agreements between Sealy and its licensors. The court noted that the National Accounts Program assailed by plaintiff operated "in much the same fashion" as the license agreements attacked by the Government. And, significantly for the present case, the court there stated that if plaintiff were claiming injury by operation of that program, "Section 5(b) would operate to suspend the statute of limitations because there is substantial identity in operation and effect between the Sealy trademark licensing program and its national accounts program." *Id.* 263 F.Supp. at 851–852. However, plaintiff's theory of liability did not claim injury by this program and it was, therefore, not entitled to the tolling effect of § 5(b). In the present case, plaintiffs' theory of liability would seem to meet the test which the plaintiff in *2361 State Corp.* failed. They allege a conspiracy similar in nature and operation to that alleged in the earlier Government actions but they allege that its effect was not limited to the domestic human consumption market but extended around the world and into the agricultural market as well. The court must conclude that these private actions, including the farm and foreign cases, are based on the prior Government proceedings and that the statute of limitations was, therefore, tolled by the institution of the FTC action in 1958 and by the return of the criminal indictment in 1961.

## II

### Prima Facie Effect of the FTC Judgment

■ The second major question before the court is whether, under § 5(a) of the Clayton Act, 15 U.S.C. § 16(a), the findings and order of the FTC under § 5 of the FTC Act, 15 U.S.C. § 45, are entitled to prima facie effect in these treble-damage actions.[10] The court has concluded that they are not because the FTC proceeding was not one "under the antitrust laws," as required by § 5(b).

The Supreme Court has stressed that § 5(a) and § 5(b) are not co-extensive, Leh v. General Petroleum Corp., *supra* 382 U.S. at 58, 86 S.Ct. 203; Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co., *supra,* 381 U.S. at 317–318, 85 S.Ct. 1473. These two sections are "governed by different considerations as well as congressional policy objectives." *Id.* at 318, 85 S.Ct. at 1477. § 5(a) is the more limited of the two, granting prima facie effect in private actions to a limited category of judgments or decrees in prior Government actions and only to the extent the judgment or decree would be "an estoppel as between the parties" to the prior action.

The crucial difference between § 5(a) and § 5(b) in the present context is the statutory language noted earlier. § 5(b) requires only that the prior action be one "to prevent, restrain or punish violations of any of the antitrust laws * * *" while § 5(a) imposes the stricter requirement that the judgment or decree be rendered in a Government proceeding "under the antitrust laws to the effect that a defendant has violated said laws. * * *" It is this court's conclusion that while the FTC proceeding under §

10. The parties have not argued and the court does not pass on the applicability of the doctrine of collateral estoppel to these cases. See, Purex Corp., Ltd. v. Procter & Gamble Co., 308 F.Supp. 584, 589–590 (C.D.Cal.1970). In an *amicus* brief, counsel for certain hospital patients seeking intervention in the state class actions argues that § 5(c) of the FTC Act, 15 U.S.C. § 45(c) gives the findings of the FTC conclusive effect in these actions. The court can find no support for this assertion in the legislative history or case law and rejects it without further discussion.

5 of the FTC Act relied on by plaintiffs was an action to prevent, restrain or punish violations of the antitrust laws, it cannot be characterized as a proceeding "under the antitrust laws" for purposes of § 5(a) of the Clayton Act. See Nashville Milk Co. v. Carnation Co., *supra.*

Although plaintiffs have failed to cite them, the few cases dealing with this precise issue have also denied prima facie effect to the results to FTC proceedings under § 5 of the FTC Act. Y & Y Popcorn Supply Co. v. ABC Vending Corp., 263 F.Supp. 709 (E.D.Pa.1967); Proper v. John Bene & Sons, Inc., 295 F. 729 (E.D.N.Y.1923). And the cases relied on by plaintiffs are distinguishable from the present case. In Farmington Dowel Products Co. v. Forster Mfg. Co., 421 F. 2d 61 (1st Cir. 1970), the court held an FTC order under § 2(a) of the Clayton Act entitled to prima facie effect, observing that unlike the situation in Proper v. John Bene & Sons, Inc., *supra*, the FTC proceeding in its case was under the Clayton Act "which is clearly an 'antitrust law.'" *Id.* at 67, n. 7. And see, Rader v. Balfour, *supra*; Purex Corp., Ltd. v. Procter & Gamble, *supra*; Lippa's, Inc. v. Lenox, Inc., *supra*.

### APPENDIX A

"PARAGRAPH SEVEN: Respondent Pfizer has in the past and is now engaging in unfair methods of competition and unfair acts and practices in commerce, in connection with the production and sale of antibiotics in that Pfizer has done and performed the following acts and practices:

* * * * * *

(c) Attempted to monopolize the antibiotics industry;

(d) Attempted to monopolize and has monopolized the tetracycline industry;

(e) Made false, misleading and incorrect statements to the United States Patent Office with the purpose and effect of inducing the United States Patent Office to grant United States Letters Patent No. 2,699,054;

(f) Caused United States Letters Patent No. 2,699,054 to be issued as a result of misrepresentations advanced by Pfizer on behalf of the applicant for the patent;

* * * * * *

(m) Issued invalid licenses under licenses under United States Letters Patent No. 2,699,054.

PARAGRAPH EIGHT: The acts and practices of the respondent Pfizer, as herein alleged, have had and do have the effect of hindering, lessening, restricting, restraining and eliminating competition in the sale of antibiotics; have had and do have a dangerous tendency to unduly hinder competition or to create in respondent a monopoly; have constituted an attempt to monopolize and have foreclosed markets and access to markets to competitors in the sale and distribution of antibiotics; are all to the prejudice of competitors of respondent and to the public; and constitute each and all unfair methods of competition and unfair acts and practices in commerce within the intent and meaning of the Federal Trade Commission Act.

PARAGRAPH NINE: For many years, and continuing to the present time, each and all of the respondents named herein have engaged in unfair methods of competition and unfair acts and practices in commerce in the manufacture, sale and distribution of tetracycline, chlortetracycline and oxytetracycline in that they have, through conspiracy, combination, agreement, and planned common courses of action, and as a part thereof, done and performed the following:

(a) Fixed and maintained arbitrary, artificial, non-competitive and rigid prices;

(b) Fixed prices;

(c) Fixed and maintained prices, terms and conditions of sale;

(d) Policed and enforced the illegally fixed prices;

(e) Established and maintained illegal resale price maintenance agreements;

(f) Established and maintained agreements to license and cross license, and established and maintained licenses and cross licenses under patents with the purpose and effect of unreasonably foreclosing and preventing competition in the production and sale of tetracycline and chlortetracycline;

(g) Unreasonably foreclosed access to substantial markets to competitors and potential competitors;

(h) Denied to competitors and potential competitors a reasonable opportunity to complete;

(i) Attempted to monopolize the antibiotics industry;

(j) Attempted to monopolize and have monopolized the manufacture, sale and distribution of tetracycline;

(k) Pfizer, Bristol and Cyanamid withheld from the United States Patent Office material and probative information and material in connection with the filing and prosecution of patent applications, as a result of which Pfizer was enabled to procure United States Letters Patent No. 2,699,054 on tetracycline;

\* \* \* \* \* \*

(m) Cyanamid, Bristol, Olin Mathieson and Upjohn solicited and accepted and Pfizer issued licenses under United States Letters Patent No. 2,699,054 with knowledge that:

1. Material and probative information and material were withheld from the United States Patent Office by one or more of the applicants for said patent prior to, during and after interference proceedings before the United States Patent Office.

2. Pfizer submitted false, misleading and incorrect information to the United States Patent Office in support of its application for said patent.

3. There was no real invention or novelty in the claims of said patent.

4. The claims of said patent disclosed no patentable invention in view of the prior state of the art at the time the initital application therefor was filed.

5. The alleged invention was made known or used by others in this country before the alleged invention by the applicant (Conover).

6. The alleged invention was in public use and/or on sale in this country more than one year prior to the filing of the application for said patent.

7. The subject of the patent was obvious, at the time of the filing of the respective applications for the patent, to anyone having ordinary skill in the art.

PARAGRAPH TEN: The acts and practices of the respondents, as herein alleged, have had and do have the effect of hindering, lessening, restricting, restraining and eliminating competition in the sale of antibiotics; have had and do have a dangerous tendency to unduly hinder competition or to create in respondents a monopoly; have constituted an attempt to monopolize; have foreclosed markets and access to markets to competitors in the sale and distribution of antibiotics; and all to the prejudice of competitors of respondents and to the public; and constitute unfair methods of competition and unfair acts and practices in commerce within the intent and meaning of the Federal Trade Commission Act. \* \* \*"