**HINDS COUNTY, MISSISSIPPI, Plaintiff,**

v.

**WACHOVIA BANK N.A., et al., Defendants.**

**In re Municipal Derivatives Antitrust Litigation.**

No. 08 Civ. 2516(VM).
08 MDL No. 1950 (VM).

United States District Court, S.D. New York.

Aug. 6, 2012.

Jeffrey B. Gittleman, Barrack, Rodos & Bacine, Eugene A. Spector, William G. Caldes, Spector, Roseman & Kodroff Wil-lis, P.C., Steven Joseph Greenfogel, Lite DePalma Greenberg, LLC, Philadelphia, PA, Roland Gustaf Riopelle, Sercarz & Riopelle, L.L.P., Arun Srinivas Subramanian, Seth D. Ard, William Christopher Carmody, Susman Godfrey LLP, Magda Maria Jimenez, Boies, Schiller & Flexner, LLP, Daniel Edward Seltz, Lieff Cabraser Heimann & Bernstein LLP, Bernard Persky, Hollis L. Salzman, William V. Reiss, Labaton Sucharow, LLP, New York, NY, David R. Woodward, Heinrichson, Siegel, P.L.L.C., Jack A. Simms, Jonathan M. Shaw, Matthew Friedrich, Tanya S. Chutkan, William A. Isaacson, Boies, Schiller & Flexner LLP, Megan E. Jones, Michael D. Hausfeld, Hausfeld, LLP, Washington, DC, Dylan J. Mcfarland, Vincent J. Esades, Heins Mills & Olson, P.L.C., Minneapolis, MN, Erica W. Harris, Susman Godfrey LLP, Houston, TX, Michael E. Moskovitz, William H. London, Freed Kanner London & Millen LLC, Bannockburn, IL, Precious Tyrone Martin, Office of Assemblyman Richard Brodsky, Elmsford, NY, Andrew Scirica Kingsdale, Eric B. Fastiff, Joseph Richard Saveri, Richard M. Heimann, Steven E. Fineman, Lieff Cabraser Heimann & Bernstein, LLP, G. Scott Emblidge, James A. Quadra, Sylvia Sokol, Moscone, Emblidge & Quadra, LLP, William John Heye, Saveri & Saveri, Inc., Solomon B. Cera, Gold Bennett Cera & Sidener, LLP, San Francisco, CA, Robert Gerard Eisler, Grant & Eisenhofer, PA, Wilmington, DE, Nanci E. Nishimura, Daniel R. Sterrett, Cotchett, Pitre & McCarthy, Burlingame, CA, for Plaintiff.

J. David Jackson, Dorsey & Whitney, Minneapolis, MN, Joshua Michael Newville, Laurence T. Sorkin, Thorn Rosenthal, Cahill Gordon & Reindel LLP, Bryan Paul Kessler, Debevoise & Plimpton LLP, Gregory Arthur Markel, Cadwalader, Wickersham & Taft LLP, Janelle Louise Filson, Thomas C. Rice, Joseph Franklin Wayland, Peri Lauren Zelig, Peter Coyne

Thomas, Ryan Anthony Kane, Simpson Thacher & Bartlett LLP, Stephanie G. Wheeler, William Compton Hughes, Sullivan And Cromwell, LLP, Kevin James Perra, Ronald Steve Rauchberg, Proskauer Rose LLP, Brian M. Lutz, Gibson, Dunn & Crutcher, LLP, Michael Gordon Biggers, Bryan Cave LLP, Alec P. Ostrow, Stevens & Lee, Constantine D. Pourakis, Salomon Green & Ostrow, P.C., Anne Catharine Lefever, Mark Robert Hellerer, Pillsbury Winthrop Shaw Pittman, LLP, Steven R. Schindler, Schindler Cohen & Hochman, John Vukelj, DLA Piper U.S. LLP, Howard Jeffrey Rubin, Davis & Gilbert LLP, Gustavo Manuel Gonzalez, Willkie Farr & Gallagher LLP, James R. Levine, Jason Andrew Roth, Rachel Anne Owens, Davis & Gilbert LLP, Richard William Beckler, Howrey LLP, Lashon K. Kell, Bracewell & Patterson, LLP, Christopher Michael Egleson, Akin Gump Strauss Hauer & Feld, New York, NY, Charles F. Rule, Joseph J. Bial, Cadwalader, Wickersham & Taft, LLP, Christopher Michael Viapiano, Sullivan & Cromwell LLP, Jesse T. Smallwood, Williams & Connolly LLP, Washington, DC, William Perry Brandt, Bryan Cave LLP, Kansas City, MO, Anthony David Gill, DLA Piper U.S. LLP, Florham Park, NJ, Robert J. Mathias, DLA Piper LLP, East Palo Alto, CA, Quincy Montgomery Crawford, DLA Piper U.S. LLP, Baltimore, MD, Timothy E. Hoeffner, DLA Piper U.S. LLP, Philadelphia, PA, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

By letter dated March 5, 2012, Class Plaintiffs requested leave to file a Third Amended Complaint in this action. (Docket No. 1678.) Among other changes, the proposed Third Amended Complaint would add as named defendants Trinity Funding Co. LLC and GE Funding Capital Market Services Group (the "GE Defendants").

The Court deems the March 5, 2012 letter to be Class Plaintiffs' motion to amend the complaint as set forth therein.

By letters dated March 6, 2012 (Docket No. 1679) and March 14, 2012 (Docket No. 1683), the GE Defendants opposed Class Plaintiffs' motion. The GE Defendants argued that, in light of previous decisions in this matter that dismissed on statute of limitations grounds other plaintiffs' claims against the GE Defendants, Class Plaintiffs' proposed claims are likewise time-barred. Class Plaintiffs responded, by letter dated March 15, 2012 (Docket No. 1682), citing 15 U.S.C. § 16(i) (" § 16(i)") for the first time in this litigation. The basic function of § 16(i) is to toll the statute of limitations as to private civil antitrust claims during the pendency of government antitrust proceedings related to the same subject matter. *See* 15 U.S.C. § 16(i).

By letter dated March 16, 2012 (Docket No. 1685), the GE Defendants argued against the application of § 16(i) to private civil defendants who have been prosecuted under non-antitrust criminal statutes and asserted that § 16(i) could not reopen a limitations period which began and concluded prior to the initiation of the relevant government proceeding. Class Plaintiffs submitted a further letter, dated March 19, 2012, disputing these points. (Docket No. 1684.)

Because § 16(i) had not been addressed by the parties in any prior briefing to this Court, on April 3, 2012, the Court ordered Class Plaintiffs and the GE Defendants to submit further letter-briefs on the applicability of § 16(i) to the Class Plaintiffs' proposed additional claims. (Docket No. 1687.) On April 13, 2012, each party did so (*see* Docket Nos. 1709 & 1710), supplementing and refining the arguments presented in their earlier submissions described above.

Now, with the benefit of these submissions and for the reasons discussed below, the Court finds that § 16(i) operates to toll the statute of limitations as to Class Plaintiffs' proposed claims against the GE Defendants and, accordingly, finds that Class Plaintiffs' proposed amendments would not be futile. Further, the Court finds that there has been no undue delay in bringing the amendments. For these reasons, the Court GRANTS Class Plaintiffs' request to amend.

## I. BACKGROUND[1]

This multidistrict litigation centers upon an alleged conspiracy among various financial institutions and brokerage firms to illegally rig bids, limit competition, and fix prices in the trillion-dollar municipal derivatives market. The litigation has continued for over four years and the Court has issued numerous opinions on various issues; familiarity with those opinions and the course of this litigation is presumed.[2]

To provide a measure of context for this particular dispute, the Court will broadly and briefly recapitulate some of the relevant facts. Class Plaintiffs allege a nationwide conspiracy "to fix, maintain or stabilize the price of, and to rig bids and allocate customers and markets for" government investment contracts and other derivative financial products linked to municipal bonds. (Second Consolidated Am. Class Action Compl., Docket No. 450,

June 22, 2009 ("SCACAC") ¶ 1.) The operative complaint alleges that brokers of municipal derivatives, who were hired by municipal bond issuers, combined and conspired with certain providers of those investments to fix the prices charged for the transactions. The effect of these actions, according to Class Plaintiffs, was to increase the portion of the returns on those derivative instruments that would be retained by the financial institutions and brokers rather than paid out to the municipal issuers as interest. To manipulate auctions for municipal derivatives, as Class Plaintiffs allege, individuals employed by certain defendants acted as knowing conduits of pricing and · bidding information before and during auctions. Moreover, Class Plaintiffs allege that derivative-provider defendants shared profits from manipulated derivative transactions with broker defendants through elaborate and disguised kickback payments.

The alleged conspiracy, as described by the Class Plaintiffs, is as vast as it is complicated. Class Plaintiffs allege corruption throughout many of the largest global financial institutions and present as victims unsophisticated and financially over-burdened towns, school districts and municipal service entities. In addition to the instant suit brought by Class Plaintiffs, scores of individual municipal plaintiffs, multiple state attorneys general and sever-

---

1. "For purposes of this motion to amend, the Court accepts all well-pleaded, nonconclusory factual allegations as true and treats them in the best light for the Plaintiff." *Bartels v. Inc. Vill. of Lloyd Harbor*, No. 10 Civ. 5076, 2012 WL 2576142, at *1 (E.D.N.Y. July 2, 2012) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir.2009)).

2. Specifically, the Court presumes familiarity with the following decisions: the September 7, 2011 Decision and Order, *Hinds Cnty. v.*

*Wachovia Bank, N.A.*, 811 F.Supp.2d 910 (S.D.N.Y.2011) (*"Hinds County V"*); the June 23, 2011 Decision and Order, *Hinds Cnty. v. Wachovia Bank, N. A.*, 790 F.Supp.2d 121 (S.D.N.Y.2011) (*"Hinds County IV"*); the April 29, 2011 Decision and Order, *Hinds Cnty. v. Wachovia Bank, N.A.*, 790 F.Supp.2d 106 (S.D.N.Y.2011); the April 26, 2010 Decision and Order, *Hinds Cnty. v. Wachovia Bank, N.A.*, 708 F.Supp.2d 348 (S.D.N.Y. 2010); and the March 25, 2010 Decision and Order, *Hinds Cnty. v. Wachovia Bank, N.A.*, 700 F.Supp.2d 378 (S.D.N.Y.2010) (*"Hinds County I "*).

al federal agencies have also initiated civil, enforcement, and criminal actions arising out of the same alleged conspiracy targeted by Class Plaintiffs. News media, ranging from niche trade publications to *Rolling Stone* magazine, have reported on the investigations and subsequent civil and criminal litigation. The instant dispute implicates the substantive relationship between certain federal criminal prosecutions and the Class Plaintiffs' action, as well as the effect that early media reporting had or should have had on Class Plaintiffs' knowledge of the existence of antitrust claims against the GE Defendants.

Specifically, Class Plaintiffs ask the Court to find that the statute of limitations applicable to its claims against the GE Defendants has been tolled, pursuant to § 16(i) during the pendency of the federal prosecution initiated by the October 29, 2009 indictment in *United States v. Rubin/Chambers, Dunhill Insurance Services, Inc., et al.,* 09 Cr. 1058 (S.D.N.Y. filed Oct. 29, 2009) (*"CDR"*). The GE Defendants argue that even if § 16(i) is found to toll the applicable limitations period based on the *CDR* indictment, early news reports of the CDR investigation put Class Plaintiffs on inquiry notice as to any related claims and started the four-year limitations period more than four years before the *CDR* indictment was filed. Thus, according to the GE Defendants, the limitations period expired before it could be tolled by § 16(i), and Class Plaintiffs' claims would be time-barred even if that statute does apply.

To determine whether § 16(1) is applicable to the Class Plaintiffs' proposed claims against the GE Defendants, the Court must begin with a brief review of the *CDR* indictment and a related criminal proceeding.

### A. THE CDR AND CAROLLO INDICTMENTS

On November 15, 2006, agents of the Federal Bureau of Investigations raided the offices of several municipal bond brokers, including the Southern California offices of a broker known as "CDR." Shortly thereafter, the Antitrust Division of the Department of Justice (the "DOJ") presented its case to a grand jury convened in the Southern District of New York. Ultimately, on October 29, 2009, the grand jury returned the *CDR* indictment, which named as defendants CDR and three of its executives and alleged a criminal antitrust conspiracy in the municipal derivatives industry. (*See* Indictment, *United States v. Rubin/Chambers, Dunhill Ins. Servs., Inc. et al.,* 09 Cr. 1058, (S.D.N.Y. filed Oct. 29, 2009) (Docket No. 1) (the *"CDR* Indictment").)

Count One of the *CDR* Indictment alleges a "conspiracy in unreasonable restraint of interstate trade," which "consisted of an agreement .... to allocate and rig bids for investment agreements or other municipal finance contracts," in violation of 15 U.S.C. § 1. (CDR Indictment ¶¶ 17, 18.) The *CDR* Indictment describes the "manner and means by which the conspiracy was carried out" by listing several types of actions taken by co-conspirators in furtherance of the alleged conspiracy. (*Id.* ¶ 19.) Some of those actions include designating winners in advance of auctions, communicating competitors' price information to bidders before and during auctions, submitting intentionally losing bids to create the appearance of competitive auctions, and paying kickbacks to brokers in the form of unearned or inflated fees. (*See id.*)

The GE Defendants were not included as defendants in the *CDR* Indictment, nor were they named expressly therein as co-conspirators. The DOJ did, however, pros-

ecute former employees of a GE Defendant for related and overlapping conduct by a separate indictment. (*See United States v. Carollo et al.*, 10 Cr. 654 (S.D.N.Y. filed July 27, 2010) (Docket No. 1) (the "*Carollo* Indictment").) The *Carollo* Indictment did not allege antitrust violations; the offenses it described charged only fraud and conspiracy. Further, the DOJ entered into a non-prosecution agreement with one of the GE Defendants that related to conduct at issue in the *CDR* prosecution and addressed violations of non-antitrust statutes. (*See* No. 08 Civ. 2516, Docket No. 1709 at 2.)

The *Carollo* Indictment presents a highly detailed account of the same scheme to manipulate the municipal derivatives market as set forth in the *CDR* Indictment and, in many instances, employs identical language. (*See generally Carollo* Indictment ¶¶ 13–21.) In fact, the *Carollo* Indictment describes at length actions taken by *Carollo* defendants, former employees of GE Defendants, in concert with *CDR* defendants. (*See, e.g., id.* ¶¶ 22–23; 28–31.) On May 11, 2012, the three former employees of the GE Defendants charged in the *Carollo* Indictment were convicted by a jury sitting in the Southern District of New York. During that trial, defendants named in the *CDR* Indictment, who had pled guilty to antitrust violations pursuant to cooperation agreements, testified at length regarding the participation of individuals working for a GE Defendant in certain transactions that constituted overt acts in furtherance of the antitrust conspiracy charged in the *CDR* Indictment.

B. *THE CURRENT OPERATIVE COMPLAINT AND CLASS PLAINTIFFS' PROPOSED AMENDMENTS*

The SCACAC describes the same conspiracy as the *CDR* Indictment. It alleges manipulation of the same set of financial instruments through the same bid-rigging conduct by the same set of institutional players. In its fifth paragraph, the SCACAC describes the alleged conspiracy using words and phrases that closely echo those found in the *CDR* Indictment. (SCACAC ¶ 5.) In its sixth paragraph, the SCACAC expressly identifies the conspiracy it alleges as the object of the DOJ investigation that culminated in the *CDR* Indictment. (*Id.* ¶ 6.) In its seventh paragraph, the SCACAC expressly identifies the time period at issue as "track[ing] the time period of the DOJ investigation." (*Id.* ¶ 7.) By the end of its brief introductory section, the SCACAC has squarely situated itself as a private, civil action seeking redress of the same illegal activity targeted by the *CDR* prosecution.

The SCACAC also expressly relies on the *CDR* Indictment—and the investigation that led to that charging instrument—to establish a factual basis for the alleged conspiracy. In so doing, the SCACAC makes several specific allegations of facts that also provided a basis for the *CDR* Indictment and prosecution.

Most prominently, the SCACAC includes a section entitled, "Antitrust Division Investigation," which reviews the 2006 raid of CDR's offices, the *CDR* Indictment and the fact that the GE Defendants were subpoenaed in connection with the CDR investigation. (*Id.* ¶¶ 162–168.) Actions taken by CDR in furtherance of the conspiracy alleged in the SCACAC are set forth in at least ten separate paragraphs. (*See id.* ¶¶ 103, 114, 121–3, 130, 131, 137, 138 & 147.) Several employees of CDR are listed among those who "engaged in the illegal communications and conduct . . . to restrain competition" and "engaged in the illegal agreement, understanding and conspiracy." (*See id.* ¶¶ 100–01.)

In short, the operative complaint, as it stands, advances private civil claims for the precise conduct complained of in the

*CDR* Indictment. Now, Class Plaintiffs seek to include the GE Defendants as named defendants.[3]

## C. *EARLY MEDIA COVERAGE OF THE MUNICIPAL DERIVATIVES INVESTIGATIONS*

The SCACAC also draws heavily from news media reports regarding potential malfeasance in and investigations of the municipal derivatives industry. Prior opinions of this Court have discussed in some depth the effect of such media coverage upon the relevant dates for statute of limitations purposes. *See generally Hinds County V*, 811 F.Supp.2d 910; *Hinds County IV*, 790 F.Supp.2d 121.

In response to Class Plaintiffs' instant request to amend, the GE Defendants point to specific media reports which they assert should have put Class Plaintiffs on notice of any private civil claims that could be related to the *CDR* Indictment. According to the GE Defendants, the CDR investigation was publicly known at least as early as August 2005, when it was reported by Bloomberg news services. (Docket No. 1709 at 5.) As early as April 2005, the publication *Bond Buyer* reported on corruption at CDR, though the paper did not discuss the specific conduct at issue in the *CDR* Indictment. (*Id.*) A regional paper—*The Kansas City Star*—also reported on an IRS inquiry into the municipal bond market. (*Id.*) Earlier still, in a February 2005 bulletin, one law firm noted that those in municipal finance were aware of ongoing investigations. (*Id.*) However, no news source cited by the GE Defendants makes specific reference to the GE Defendants.

**3.** The Court notes that the SCACAC already expressly includes the GE Defendants as

## II. *LEGAL STANDARDS*

### A. *LEAVE TO AMEND*

■ Rule 15 of the Federal Rules of Civil Procedure provides that courts "should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). Leave to amend should be granted unless there is "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir.2000) (noting that leave to amend is "discretionary" and should be "freely given"); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." (citations omitted)).

■ An amendment may be denied as futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6). *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991) (citation omitted); *Wong v. HSBC USA, Inc.*, 2010 WL 3154976, at *5 (S.D.N.Y. Aug. 9, 2010) (*quoting Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir.2002)). Specifically, an "[a]mendment would likely be futile if . . . the claims the plaintiff sought to add would be barred by the applicable statute of limitations." *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir.2000) (citation omitted).

■ Additionally, "a court has discretion to deny leave to amend where the

named co-conspirators. (SCACAC ¶¶ 43–44.)

motion is made 'after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery.'" *State Farm Ins. Cos. v. Kop–Coat, Inc.*, 183 Fed.Appx. 36, 37–38 (2d Cir.2006) (*quoting Grace*, 228 F.3d at 53–54). Delay alone, in the absence of an additional reason such as prejudice to the opposing party, usually does not warrant denial of leave to amend. *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234–35 (2d Cir.1995) (*citing State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981)).

Applying these principles, the Court should grant Class Plaintiffs leave to amend the SCACAC unless the GE Defendants can show that the proposed amendment would be futile because the potential claims are time-barred or that the proposed amendment comes after a prejudicial and undue delay.

### B. *SECTION 16(i)*

For present purposes, the Rule 15 futility inquiry collapses into the underlying question of timeliness. In evaluating the parties' invocation of the doctrine of fraudulent concealment, the Court has already ruled that plaintiffs were on inquiry notice of the claims at issue here "at least as of November 15, 2006." *See* September 2011 Decision at 912. Using that date, the applicable four-year statute of limitations would have expired on November 15, 2010 unless some other statute or doctrine acted to toll the running of the clock. Class Plaintiffs argue that § 16(i), as applied to the October 2009 *CDR* Indictment, does just that, rendering their claims against the GE Defendants timely and their proposed amendment not futile.

 Section 16(i), in relevant part, reads:

Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, ... the running of the statute of limitations in respect of every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter....

15 U.S.C. § 16(i). In analyzing the text of § 16(i), the Supreme Court of the United States has held that "a private party who brings suit for a conspiracy against which the Government has already brought suit is undeniably basing its claim in whole or in part upon the matter complained of in the Government suit." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 335–36, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). This presumption holds "even if the defendant named in the private suit was named neither as a defendant nor as a coconspirator by the Government." *Id.* Additionally, for § 16(i) to apply, "[t]he private plaintiff is not required to allege that the same means were used to achieve the same objectives of the same conspiracies by the same defendants." *Leh v. General Petroleum Corp.*, 382 U.S. 54, 59, 86 S.Ct. 203, 15 L.Ed.2d 134 (1965).

 Claims brought in a private antitrust suit are "based in whole or in part on" the "matter complained of" in a prior criminal antitrust prosecution, if "the matters complained of in the government proceeding bear a real relation to the private plaintiff's claim for relief." *Id.* at 59, 86 S.Ct. 203. In determining whether such a "real relation" exists, a court's analysis "must be limited to a comparison of the two complaints on their face." *Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, 832–33 (9th Cir.1983) (*quoting Leh*, 382 U.S. at 65–66, 86 S.Ct. 203); *see also Phil-*

*ip Morris Inc. v. Heinrich,* No. 95 Civ. 0328, 1996 WL 363156, *11 (S.D.N.Y. June 25, 1996) (applying § 16(i) by "comparing the plaintiff's complaint with the complaint in the government proceeding on which the plaintiff relies" (*citing Leh,* 382 U.S. at 59, 86 S.Ct. 203)).

■ Though the United States Court of Appeals for the Second Circuit has not elaborated on the "real relation" test announced by the Supreme Court in *Leh,* at least one court in this district has applied the Third Circuit's definition requiring that the litigations share "a 'substantial identity' in order to invoke § 16(i) tolling." *Philip Morris,* 1996 WL 363156, at *11 (*citing New Jersey v. Morton Salt Co.,* 387 F.2d 94, 98 (3d Cir.1967), *cert. denied,* 391 U.S. 967, 88 S.Ct. 2035, 20 L.Ed.2d 880 (1968)). A private action that is substantially broader than a prior Government action may still benefit from § 16(i) tolling where the allegations in the private action incorporate the subject matter of the Government action. *See In re Antibiotic Antitrust Actions,* 333 F.Supp. 317, 321 (S.D.N.Y.1971) (*citing Zenith Radio,* 401 U.S. 321, 91 S.Ct. 795); *see also In re Scrap Metal Antitrust Litig.,* No. 02 Civ. 0844, 2006 WL 2850453, at *22 (N.D.Ohio 2006) ("[S]imply because the conspiracy alleged in this case *may* differ slightly from the conspiracy alleged in the [Government] case, and because [a particular defendant] was not a named defendant in that case, does not automatically prevent § 16(i)'s application.").

There is no dispute that the *CDR* prosecution represents a "criminal proceeding . . . instituted by the United States to prevent, restrain or punish violations of [an] antitrust law[ ]." The central question presented as to § 16(i), then, is whether Class Plaintiffs' claims against the GE Defendants, as stated in the proposed amendment, are "based in whole or in part on any matter complained of in" the *CDR* prosecution.

## C. INQUIRY NOTICE

■ Antitrust claims are subject to a four-year statute of limitations. *See* 15 U.S.C. § 15b. When civil plaintiffs allege conspiracies involving bid-rigging and price-fixing in violation of 15 U.S.C. § 1, the statute of limitations does not begin to run until the plaintiffs, in the exercise of due diligence, discover the antitrust violation. *See Hinds County I,* 700 F.Supp.2d at 399; *In re Nine West Shoes Antitrust Litig.,* 80 F.Supp.2d 181, 192 (S.D.N.Y. 2000).

■ As a general matter, the question of whether specific media reports serve to put a diligent plaintiff on inquiry notice involves an objective inquiry into whether the totality of the circumstances revealed probable—and not merely possible-illegal activity attributable to the defendants named in the complaint and of the type described therein. *See Staehr v. Hartford Fin. Servs. Group, Inc.,* 547 F.3d 406, 427 (2d Cir.2008) (describing inquiry notice in context of securities fraud action). "Inquiry notice may be found as a matter of law only when uncontroverted evidence clearly demonstrates when the plaintiff should have discovered the fraudulent conduct." *Id.* (citation omitted).

Here, the Court has already found that individual antitrust plaintiffs should have been on notice of the conspiracy at issue at least as of the November 15, 2006 raids on the offices of CDR and other co-conspirators. The GE Defendants contend that, assuming Class Plaintiffs acted diligently, they were on inquiry notice of any claims that would be related to the *CDR* Indictment at least as of early 2005, when the first general reports of investigations into the municipal bond market were published. If Class Plaintiffs were on inquiry notice of

the claims at that point, the statute of limitations would have expired in early 2009, prior to the October 2009 *CDR* Indictment, rendering ineffectual the operation of § 16(i) based on that prosecution.

The inquiry notice question presented, therefore, is whether Class Plaintiffs were on notice of their claims against the GE Defendants sometime prior to October 2005.

### III. *ANALYSIS*

The Court's analysis below supports the following conclusions: First, that Class Plaintiffs' claims against the GE Defendants demonstrate a "real relation" to the matters complained of in the *CDR* Indictment, and, accordingly, that § 16(i) functions to toll the statute of limitation during the pendency of the *CDR* prosecution. Second, that the GE Defendants cannot establish that Class Plaintiffs were on inquiry notice prior to October 2005, and, as such, that the statute of limitations did not begin to run until less than four years before to the *CDR* Indictment was filed. Third, because § 16(i) applies and the statute of limitations had not expired prior to October 2009, the pendency of the *CDR* prosecution tolls the relevant statute of limitations and renders Class Plaintiffs' claims timely and the proposed amendment not futile. Fourth and finally, the Court finds that Class Plaintiffs have not unduly delayed seeking to amend their pleadings to name the GE Defendants. Because the proposed amendment is neither futile nor sought after undue delay, the Court will grant Class Plaintiffs' request to file a Third Amended Class Action Complaint.

### A. *SECTION 16(i) APPLIES TO CLASS PLAINTIFFS' CLAIMS*

■ To determine whether or not Class Plaintiffs' claims against the GE Defendants are "based in whole or in part on any matter complained of in" the *CDR*

prosecution, the Court need look only at the faces of the *CDR* indictment and SCA-CAC. As detailed above, these two documents alleged substantially the same conspiracy.

■ Where, as here, the private civil action alleges a conspiracy that uses substantially similar means to accomplish the same anticompetitive goal in the same market as the prior government suit, § 16(i) is applicable. *See, e.g., Philip Morris,* at *11 (applying § 16(i) where civil plaintiff "makes the same allegations . . . elaborating upon the mechanics of the scheme"); *Chipanno,* 702 F.2d at 832–33 (applying § 16(i) because "[p]laintiffs' complaint alleged a conspiracy that included the objectives, means, time span, and geographic scope of the conspiracy alleged in the government suit").

The conspiracy alleged by Class Plaintiffs is inarguably based on the conspiracy alleged by the Government in the *CDR* Indictment. As such, there can be no reasonable doubt that a "real relation" exists between the *CDR* Indictment and Class Plaintiffs' claims against the GE Defendants.

Nevertheless, the GE Defendants assert that § 16(i) should not be applied to claims against them because the Government did not name their former employees as CDR's coconspirators. Rather, the Government chose to indict certain former employees of the GE Defendants under statutes outside of the antitrust laws for conduct indisputably related to the antitrust conspiracy alleged in the *CDR* Indictment. Similarly, one of the GE Defendants itself entered into a non-prosecution agreement with the DOJ that did not include antitrust violations in its scope, though, again, it related to the same underlying conduct. Based on those Government charging decisions, the GE Defendants argue that the Government has

stated a definitive position that the GE Defendants' conduct did not violate antitrust laws. (*See* Docket No. 1709 at 2–4.) The Court is not persuaded. Neither law nor basic logic supports the GE Defendants' theory.

First, the argument cannot stand as a matter of law. Decades ago, the Supreme Court interpreted § 16(i) to apply to claims against private, civil defendants who were not named as co-defendants or co-conspirators in the related, prior Government action. *See Zenith Radio*, 401 U.S. at 335, 91 S.Ct. 795. In *Zenith Radio*, the Court was unequivocal: "If ... the government sues only certain conspirators, but also alleges and proves during trial that others were conspirators, the fact of the tolling of the statute against those so proved but not sued can hardly be denied." *Id.* Further, even if, in the course of its prior action, the government does not prove that a specific defendant was a co-conspirator, § 16(i) may still apply if the later private plaintiff can prove as much. *See id.* Neither the Supreme Court nor any court applying *Zenith Radio* has created an exception from § 16(i) to exempt putative private civil defendants who have been charged by the Government for non-antitrust offenses indisputably related to the same underlying conduct. This Court declines to do so now.

Second, the GE Defendants have presented no explanation for how the particular charging strategy adopted by the DOJ serves to alter the relationship between the *CDR* Indictment and the Class Plaintiffs' claims—which, of course, is the only subject of inquiry mandated by § 16(i).[4]

*Leh* limits the Court's inquiry to the faces of the *CDR* Indictment and the Class Plaintiffs' pleading to determine whether or not § 16(i) applies. *See Leh*, 382 U.S. at 65, 86 S.Ct. 203. The GE Defendants' argument asks the Court to ignore the Supreme Court's rule in *Leh* and to speculate as to an array of conceivable conclusions implicit in prosecutorial decisions; the Court declines that invitation. *Cf. Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 321 (4th Cir.2007)_(rejecting "reading [that] would require us to look beyond the face of the DOJ complaint").

■ The application of § 16(i) to Class Plaintiffs' claims against the GE Defendants also advances the fundamental and repeatedly recognized Congressional purpose in enacting § 16(i). "[T]he tolling provision is primarily [intended] to enable private litigants to have the benefit of the final judgment in the government's case ... [and] also to enable the private litigants to have the benefit of whatever clarification of either the facts or the law the government's litigation may provide." *In re Lower Lake Erie Iron Ore Litig.*, MDL 587, 1987 WL 4775, at *1 (E.D.Pa. Apr. 13, 1987); *see also, Chipanno*, 702 F.2d at 832 ("[E]vidence adduced in the trial of the government suit would be of practical assistance to plaintiffs in proving their own complaint [and i] t was precisely the purpose of [§ ] 16(i) to provide such assistance to private antitrust complainants."). As the Supreme Court explained in *Zenith Radio*,

> holding that [§ ] 16( [i] ) tolls the statute of limitations against all participants in a

---

4. The Court is certainly not tasked with examining any other criminal indictments or filings in an effort to divine the Government's possible rationales for its charging decisions. *See Morton Salt*, 387 F.2d at 97 ("[T]he absence of complete identity of defendants may be explained on several grounds unrelated to the question of whether the private claimant's

suit is based on matters of which the Government complained ... [S]ome of the conspirators whose activities injured the private claimant may have been too low in the conspiracy to be selected as named defendants or co-conspirators in the Government's necessarily broader net." (internal quotations and citation omitted)).

conspiracy which is the object of a Government suit, whether or not they are named as defendants or conspirators therein ... materially furthers congressional policy by permitting private litigants to await the outcome of Government suits and use the benefits accruing therefrom.

401 U.S. at 336, 91 S.Ct. 795. Applying § 16(i) to Class Plaintiffs' claims against the GE Defendants gives effect to the statute's purpose by allowing Class Plaintiffs to benefit from the Government proceedings that have preceded their amended claims.

 Beyond the specific policies animating the statute, its broader remedial purpose compels courts to liberally construe § 16(i). The Supreme Court has instructed that "effect must be given to the broad terms of the statute itself—'based in whole or in part on any matter complained of-read in light of Congress' belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws." *Leh,* 382 U.S. at 59, 86 S.Ct. 203 (internal quotation and alterations omitted). "[T]he tolling provision was enacted for the benefit of private parties who were injured[, which] suggest[s] most strongly that the tolling provision, if of doubtful meaning, should be interpreted in a way which will permit a determination on their merits of private claims in this area." *Morton Salt,* 387 F.2d at 97.

Finally, the exception to § 16(i) advanced by the GE Defendants would also be untenable as a matter of common sense, given the Supreme Court's application of § 16(i) to un-indicted co-conspirators in

*Zenith Radio:* It would place possible co-conspirators against whom the Government alleges non-antitrust criminal charges in a better position than possible co-conspirators against whom the Government brings no charges whatsoever. There is simply nothing in either the statute or the case law to compel such a peculiar and potentially inequitable result.[5]

**B. *THE GE DEFENDANTS HAVE NOT ESTABLISHED THAT THE CLASS PLAINTIFFS WERE ON INQUIRY NOTICE OF THEIR CLAIMS PRIOR TO OCTOBER 2004***

 This Court has already held that "the quantity of information about government investigations into the alleged antitrust conspiracy" available to a plaintiff "in January 2005 was simply too meager, particularly in light of the fact that [the moving defendant] was not identified as a possible target," to trigger inquiry notice at that point. *See Hinds County IV,* 790 F.Supp.2d at 124. Thus, as the basis for their inquiry notice argument here, the GE Defendants advance a set of media reports from between January and August 2005. These reports—which do not mention the GE Defendants and appear to discuss broadly an ongoing and general investigation into the municipal bonds industry— are similarly "simply too meager" to hold that Class Plaintiffs should have recognized in them claims against the GE Defendants. *See id.* at 124 (*citing GO Computer, Inc. v. Microsoft Corp.,* 508 F.3d 170, 178–79 (4th Cir.2007)); *cf. Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 170 (2d Cir.2005) (finding, in securities fraud con-

---

**5.** The cases cited by the GE Defendants provide no support for their position. Each case refusing to apply § 16(i) did so on the grounds that the private, civil plaintiffs alleged a conspiracy—in a different market than the earlier, Government action. *See, e.g., Novell,* 505 F.3d at 321 ("The DOJ com-

plaint only expressly alleges harm to the markets for PC operating systems and for Internet browsers. Novell's allegations of harm to the office-productivity-applications market, therefore, overlap little with the subject matter of the DOJ complaint.").

text, that "numerous generic articles on the subject of structural conflicts appear[ing] in the financial press" insufficient to trigger inquiry notice).

Guidance from the Second Circuit in the securities fraud context cements this conclusion. First, the Second Circuit has instructed that, to trigger inquiry notice, the publications in question must provide "indications of the probability (and not just possibility)" of the relevant claims. *Staehr*, 547 F.3d at 430 (internal citations omitted). Even if the articles put forward by the GE Defendants should have suggested the possibility that class antitrust claims might be brought against them, such publications did not come close to suggesting that such claims were probable. The suggestion of probable claims necessary to trigger inquiry notice must also be defendant-specific, in contrast to the analysis required in the § 16(i) context described above. *See id.* ("The media reports cited by Appellees at most suggest the *potential* for conflicts of interest involving *some* insurers, but not the *probability* of fraud by The Hartford."); June 2011 Decision at 124 (finding January 2005 articles failed to trigger inquiry notice because specific defendant "was not identified as a possible target" of the investigation). The articles cited here do not suggest a probable claim against the GE Defendants.

Additionally, the GE Defendants rely upon an article prepared by a law firm, Thorpe, Reed & Armstrong, presumably distributed for the firm's promotional purposes. Given that article's status as specialty publications with unknown but undoubtedly limited readerships, the Court "cannot conclude" that a reasonable antitrust plaintiff "would have encountered th[is] article[ ]." *Staehr*, 547 F.3d at 434. It seems the same can safely be said for the article published in *The Kansas City Star*.

Further, as Class Plaintiffs point out, to accept the GE Defendants' position here would be to effectively initiate the limitations period and thus bar legal action against every player in an industry based on the moment any newspaper publishes a report on potential antitrust violations by any actor in that field. Under these facts, the GE Defendants' position would not be restricted by any reasonable limiting principle.

In sum, because the articles presented to the Court do not amount to "uncontroverted evidence [that] clearly demonstrates when the plaintiff should have discovered" the antitrust violations of the GE Defendants, *id.* at 427, the Court cannot find that the statute of limitations began running prior to November 15, 2006.

Accordingly, the four-year statute of limitations had not expired as of the October 2009 indictment of CDR. As the *CDR* prosecution then tolled the statute of limitations with respect to Class Plaintiffs' claims against the GE Defendants, those claims are still timely and the proposed amendment is not futile.

## C. *CLASS PLAINTIFFS' AMENDMENT WAS NOT UNDULY DELAYED*

 The Court is not persuaded that Class Plaintiffs' request to amend should be denied on the basis of undue delay for two independent reasons.

 First, even assuming that the delay was undue, the GE Defendants have not shown that they have suffered any prejudice from the elapsed time. In their earlier letter submission regarding undue delay, the GE Defendants failed to even imply that any prejudice would result from Class Plaintiffs' allegedly belated amendment. (*See* Docket No. 1683 at 3.) Without prejudice to the opposing party or some other reason, even an extended delay does

not mandate denial of leave to amend. *See Rachman Bag Co.*, 46 F.3d at 234–35.

Second, there was good reason for Class Plaintiffs to wait before seeking to amend their complaint to add the GE Defendants, so any delay was certainly not "undue." Moreover, this good reason relates directly to the discussion of § 16(i) above: Class Plaintiffs were gathering information and evidence from the ongoing criminal proceedings. (*See* Docket No. 1678.) Class Plaintiffs have been closely tracking the *CDR* prosecution, and the very purpose of § 16(i) is to permit them to do just that in an effort to buttress or develop their claims against any of CDR's co-conspirators. Were the Court to find undue delay here, it would stifle the purposes of § 16(i) through a discretionary denial of leave to amend, which is, of course, to be "freely give[n]." Fed.R.Civ.P. 15(a)(2). In the absence of prejudice to the GE Defendants, such an exercise of the Court's discretion would be improper.

## IV. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that, the Class Plaintiffs' motion for leave to amend the Second Amended Class Action Complaint, deemed contained in their March 5, 2012 letter (Docket No. 1678), is GRANTED.

**SO ORDERED.**